AMBROSE GARCIA v. THE STATE.

No. 2419. Decided April 23, 1913.

Additional opinion delivered May 21, 1913.

**1.—Murder—Charge of Court—Manslaughter—More Than One Assailant.**

Where, upon trial of murder, the evidence showed more than one assailant in an assault upon the defendant, the failure of the court in his charge on manslaughter to submit this issue, and limiting the provocation and the right of defendant to act alone upon the acts of the deceased, the same was reversible error.

**2.—Same—Rule Stated—Adequate Cause.**

The charge of the court must not confine adequate cause to the acts of deceased, if there is evidence that another is acting with him. Following Brown v. State, 54 Texas Crim. Rep., 121, and other cases.

**3.—Same—Charge of Court—Provocation.**

Where, upon trial of murder, the evidence showed that another was acting with deceased in an attack upon defendant, it was reversible error in the court's charge to limit the provocation to the acts of the deceased, in his charge on manslaughter.

### 4.—Same—Pain and Bloodshed—Adequate Cause.

Where, upon trial of murder, the evidence showed pain or bloodshed on part of defendant, the jury should have been affirmatively charged under the law of manslaughter that this was adequate cause, and a charge of the court that the jury might consider all the facts and circumstances is not sufficient.

### 5.—Same.—Self-defense—Charge of Court—Real and Apparent Danger.

Upon trial of murder, where the evidence showed both real and apparent danger, the court should have submitted a pertinent charge thereon.

### 6.—Same—Charge of Court—Threats—Conspiracy.

Where, upon trial of murder, the evidence showed that the deceased had made threats to take the life of defendant, etc., and also tended to show that his companion was in the conspiracy with him to execute those threats when they met defendant and made a joint attack upon him, this issue should have been properly submitted to the jury, and the court's charge limiting the threats to the words and acts of deceased was insufficient.

### 7.—Same—Evidence—Ill-Will—Declarations of Deceased.

Upon trial of murder, the defendant should have been permitted to show statements made by deceased of his ill-will against the defendant, although made in the absence of defendant, as this bore on the question of ill-will, and as to who began the difficulty.

### 8.—Same—Evidence—Res Gestae Statements.

Upon trial of murder, it was error not to admit testimony offered by the defendant that, immediately upon the cessation of the difficulty, defendant rapidly returned to his home, and within ten or fifteen minutes thereafter stated to his parent in a nervous, suffering and excited condition, that he had been attacked by deceased and another and that he killed deceased in the difficulty. Following Craig v. State, 30 Texas Crim. App., 619, and other cases.

### 9.—Same—Charge of Court—Murder in Second Degree—Unlawful Killing —Implied Malice.

Upon trial of murder, it was error in the court's charge on murder in the second degree to instruct the jury that malice will be implied from an unlawful killing.

### 10.—Same—Evidence—Original Testimony—Interpreter—Declarations of Defendant.

Upon trial of murder, it was error to permit a State's witness to testify as to what he had been told by the interpreter that the companion of the deceased said were defendant's declarations, just before the homicide, as this was offered as original, and not as impeaching testimony.

Appeal from the District Court of Victoria. Tried below before the Hon. John M. Green.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*Ben W. Fly* and *T. R. Wood,* for appellant.—Cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of res gestae statement of defendant: Stephens v. State, 20 Texas Crim. App., 255.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at eight years confinement in the penitentiary.

The evidence briefly stated is that all the parties to the transaction were Mexicans. The killing occurred at night. Appellant had been sent by his father with a sausage mill and Winchester rifle to a friend of his father. This friend wanted a sausage mill to use in making sausage as he purposed killing hogs. The gun was sent without request, and was accounted for in this way: On the previous year this friend of appellant's father had considerable trouble in killing a hog which was wild and this for want of a gun. This matter had been mentioned by the friend to appellant's father, and thinking this friend might need the gun he had instructed his son, appellant, to carry the gun with him on this occasion. En route from his father's home to his father's friend he met deceased and another Mexican named Feroba. The State's view of the case is that upon the meeting appellant said to the deceased, Cabasos, "I have got you where I want you," or a similar expression. That as Cabasos was alighting from his horse appellant shot him in the shoulder a little in the rear of his side. There had been trouble between the parties previously. The deceased had used very insulting language, calling appellant and his brother "cabarons," which the witnesses say is the most insulting language known to the Mexican tongue. There is also testimony to the effect that deceased had said that there would be trouble whenever he and appellant met. There was some testimony of a similar nature which it is deemed unnecessary to recapitulate. Appellant's version of the homicide was substantially as follows: That in obedience to the instructions of his father he was carrying the sausage mill and gun to Crecencio Benito, the friend of his father to which allusion is above made. En route he met Feroba and deceased on the road. Feroba spoke and said good evening. Appellant answered him and said good evening. Feroba then asked, "Where are you going?" Appellant told him he was going to Crecencio Benito to leave a sausage mill that his father was sending. Feroba then told him to get off his horse and talk to them, at which time he grabbed the reins of appellant's horse. Appellant informed him that he did not have time to converse with him; that his father had told him not to stop on the road, but to keep going. Feroba told him two or three times that he wanted to talk with him, and appellant says he thought they were not going to have any trouble and he got down from his horse. Upon getting down Feroba commenced hitting him in the breast, and the other man, deceased, commenced cutting him in the back. He says, "I told them I did not want any trouble with them and they told me they would have to kill me. They had backed me off some eight or ten yards from my horse fighting me and Refugio was going to my horse and I ran over and snatched him away from him." When appellant pushed Feroba back, deceased was coming upon him, whereupon he snatched his Winchester from his horse and shot. During the fight appellant

was cut in the shoulder behind. The scar was exhibited to the jury, and the physician who attended appellant testified also to the fact that there was a stab in the shoulder, which he described as being one and one-half or two inches long and about one and one-half or two inches deep. The contention of the State in this connection was that appellant cut himself in the shoulder, the idea of the State being that he was manufacturing a defense. There seems to be, however, no testimony to sustain this further than the fact that the physician testified that the wound was in such place that appellant might have used the knife and cut himself at that point as he could have done on most any other portion of his body. This is a sufficient statement of the facts.

The charge on manslaughter is criticised as being insufficient, and fatally so. The court gave the statutory definition of passion, and informed the jury that an assault and battery by the deceased causing pain and bloodshed is adequate cause. Then gave a general charge that although the provocation causing sudden passion must arise at the time of the killing, it was the duty of the jury in determining the adequacy of the provocation to consider all the facts and circumstances in evidence, etc. Applying the law to the case, the court instructed the jury that if they should find beyond a reasonable doubt "that the defendant, with a deadly weapon, in a sudden passion arising from an adequate cause, as the same has been hereinbefore explained, and not in defense of himself against an unlawful attack, real or apparent, producing a reasonable expectation or fear of death or serious bodily injury," etc., "you will find him guilty of manslaughter." Several grounds of objection are urged to this charge. The court was in error in not charging the jury the law of manslaughter applicable to the combined assault of deceased and Feroba. The court limited the provocation and the right of appellant on the charge of manslaughter alone to the acts of the deceased. Appellant's theory of the case, and his testimony was to the effect, that they both attacked him, and through the demand or request of Feroba he was induced to alight from his horse, believing there would be no trouble; that there was a combined assault upon him by the two. From appellant's theory the two parties were acting together. This being true, the act of one is the act of the other, and manslaughter should have been so charged. See Branch's Criminal Law, section 512. Mr. Branch thus aptly states the proposition: "The charge must not confine adequate cause to the acts of deceased if there is evidence that another is acting with deceased," citing Byrd v. State, 39 Texas Crim. Rep., 609; Stacy v. State, 48 Texas Crim. Rep., 95; Brown v. State, 54 Texas Crim. Rep., 121.

It is also contended that the court erred in limiting the provocation as was done in the charge to one person, and nowhere in the charge correcting it. That part of the charge is as follows: "The act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some other person

than the party killed." The contention is, this is inapplicable to the facts and not the law of this case. This contention is correct. While the usual rule is that the provocation of some other person than the deceased can not be used in manslaughter, yet that does not mean a provocation of more than one party when the parties are acting together. Where two or more are acting together it is not, legally, the provocation of some other person, nor is it in fact. It is the provocation of either and both of the parties who are so acting. Under such state of case both parties are giving the provocation, and without some such explanation of the law to the jury they would believe and doubtless did believe that under the charge given the provocation by Feroba could not be considered by them, or the fact that he was acting with deceased could not be considered by them under the charge of manslaughter. Appellant had the legal right to have the law of manslaughter charged from the standpoint of an attack from both Feroba and deceased. This was a case made by the defendant's evidence. In fact, it was a case on this state of facts. We would say, upon another trial with reference to manslaughter, the court should submit directly and pertinently, that if the wound or stab created pain or bloodshed, and it did both, the jury should have been told in pertinent language that this would be adequate cause, and under that state of case they could only find the defendant guilty of manslaughter provided the passion was concurring. This was not given by the court, but he gave a general charge, that if from all the facts and circumstances in the case they should find him guilty of manslaughter, to convict of that offense. Here the statutory adequate cause was relied upon as directly shown by the testimony. While the court did tell the jury that an assault causing pain or bloodshed would be adequate cause, yet when applying the law to the case he submitted it generally, limiting it to a combination of facts and circumstances, either or both, that would produce sudden passion. That did not meet the facts of this case.

It is contended the charge on self-defense is too restrictive. An inspection of the charge shows that it is submitted more from the standpoint of apparent than from real danger. While the court might submit the question of apparent danger, still the question of real danger was in the case, and should have been pertinently and appropriately submitted. If that theory was submitted at all, it was done in such a way that it would hardly be called a submission of real danger.

The court's charge is also attacked because of the failure to properly submit the issue of threats in connection with the assault. There was no evidence in the case that Feroba had threatened appellant. There is evidence to the effect that deceased did. The court limited in his charge on threats to the words and acts of the deceased, mentioning him by name. Upon another trial the court will properly instruct the jury with reference to this matter. If the deceased made threats to take the life of appellant or to do him serious bodily injury, and Feroba was in the conspiracy with him to execute those threats, they would be the

threats of Feroba, or if he assisted as a principal the deceased in making an attack upon appellant and was acting in conjunction with him, he would then be assuming all the acts and conduct of the deceased, and would be responsible for all of the acts of the deceased in assisting him in his attack upon appellant. If Feroba knew of the threats and knew of the feeling of the deceased and acted with him, he would be equally responsible from every standpoint as much so as would be the deceased. While Feroba did not threaten the life of appellant so far as the facts affirmatively show, yet he was acting as a principal with the deceased, and was responsible with the deceased in whatever illegality there was on the part of deceased in his attack upon appellant, and this whether they were doing this in pursuance of a conspiracy or whether he was assisting deceased as a principal at the time of the homicide. These matters can be used as well defensively as offensively where the facts or circumstances call for such charge.

There are several bills of exception reserved to the action of the court refusing to permit the defendant to show statements made by the deceased in the absence of appellant showing his ill-will and determination to bring about trouble with appellant upon his meeting him. To illustrate these questions this occurred: On a certain occasión, at what the witnesses call the "horse races," the deceased called appellant and his brother "cabarons," which the witnesses say is one of the most insulting remarks known in the Spanish language. Appellant and his brother, who were in a buggy, drove away, and after they drove out of hearing of the deceased, deceased continued to use such epithets. Appellant proposed to prove this, the State objected, and the court excluded it. This was error. It tended to show the feeling of the deceased toward appellant; it also tended to solve the question which was very sharply contested by the evidence of Feroba on one side and appellant on the other as to who began the difficulty. This testimony, therefore, was important, and with it all before the jury they may have taken appellant's view of it, that deceased began the difficulty. There are other bills of exception of this same character. It is unnecessary to go over those bills. They are of the same nature, and the testimony should have been admitted.

There is another contention by appellant. Immediately upon cessation of the difficulty appellant rode rapidly home, occupying about ten or fifteen minutes. Upon reaching home he proposed to prove by his father and mother as well as by himself what he said to them at the time in regard to this difficulty. By the mother and father he could prove, as well as by himself, that he was nervous, excited and suffering from the wound that had been inflicted upon him, and bleeding. His father and mother asked him about the difficulty and how it came about. He told them. The court declined to permit this evidence to go to the jury. His statement in substance, was about as he testified, that he met the parties and they insisted several times on his getting down from his horse and talking with them, and he did so, and they then

made the attack upon him, and he shot one of them; that ceased the difficulty, and he got on his horse and rode home rapidly. We are of the opinion, under a long list of authorities, this testimony was admissible. See Branch's Criminal Law, section 342. Mr. Branch thus states the proposition: "If res gestae, it is error to exclude defendant's statements, made shortly after the difficulty, to the doctor or person dressing his wounds," citing Craig v. State, 30 Texas Crim. App., 619; Wakefield v. State, 50 Texas Crim. Rep., 124. For other cases see the above cited section in Mr. Branch's work. Again he states this rule: "Error to exclude statements of defendant made a short time after the difficulty, where they were instinctively made and while under excitement, or not shown to be not spontaneous." There are a great number of authorities cited under this proposition by Mr. Branch, which we deem unnecessary to collate in the opinion. Again, he states the rule: "Where defendant reached his father's house, greatly excited, about six minutes after the shooting, running his horse at full speed, and was immediately asked what was the matter, his reply was res gestae," citing Craven v. State, 49 Texas Crim. Rep., 78; Douglass v. State, 54 Texas Crim. Rep., 639; Craig v. State, 30 Texas Crim. App., 619. In the Craig case the time elapsing was ten or more minutes. Some of the cases may be cited here: Griffin v. State, 40 Texas Crim. Rep., 312; Gray v. State, 47 Texas Crim. Rep., 375; Wakefield v. State, 50 Texas Crim. Rep., 124; Douglass v. State, 54 Texas Crim. Rep., 639; Clark v. State, 56 Texas Crim. Rep., 293; Rainer v. State, 148 S. W. Rep., 735. These remarks will apply to the bills of exception reserved to the ruling of the court with reference to the offered testimony of appellant's father, mother and himself upon this issue. The facts set out in the bills of exception proposed to be shown bring it within the rule laid down by these numerous decisions. Appellant had ridden rapidly from the scene of the trouble to his father's house. He was nervous, excited, wounded and bleeding. His father and mother while examining the wound asked him as to the matter and how it came up; he told them, and offered all these matters before the jury. The court excluded it. We have not deemed it necessary to take up all the bills of exception with reference to these various matters, but enough of them in order to illustrate the errors to indicate to the trial court how the case should be tried.

There is one other question. While it is not brought forward for reversal, it may be well enough to caution the trial judge so that it may not occur upon another trial. Appellant was convicted of murder in the second degree and allotted eight years. The court charged the jury that "malice will be implied from an unlawful killing." Then applying the law to this part of the case he instructed the jury that if appellant unlawfully killed, etc., and not in justification of himself, or rather in self-defense, he would be guilty of murder in the second degree. This charge is wrong. See Roberts v. State, recently decided by this court, and for a discussion of the matter see Miles v. State, 18 Texas Crim. App., 156, opinion by Judge Hurt. Malice will not

be implied from an unlawful killing necessarily. There are several unlawful killings out of which malice may not grow or from which it can not be implied, that is, legally implied. Manslaughter and negligent homicide are unlawful and under some circumstances accidental homicide might be unlawful. We mention this so that upon another trial this matter will not occur.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

### ON REHEARING.

May 21, 1913.

DAVIDSON, PRESIDING JUDGE.—Appellant files a motion for rehearing asking that the court pass upon his eighth bill of exceptions in view of another trial. The bill recites that while Mr. Weisiger was testifying for the State he stated that Kyle, Sylvan and Saens accompanied him to the scene of the homicide in an automobile the day after the homicide and there met and talked with State's witness Feroba through Saens as interpreter. State's counsel then asked this question: "What was interpreted to you by Henry Saens as to Feroba's statement of how this meeting occurred?" Several objections were urged to the question, which were overruled, and witness was permitted to testify that Saens said that Feroba said that when they met the defendant the latter remarked, "Now I have got you where I want you," or "Here is where I want you." Various objections were again urged to the introduction of this testimony. In the manner presented by this bill this testimony should not have been permitted to go to the jury. This was not impeaching the testimony of Saens but it was Weisiger's recollection of what Saens had said to him interpreting what the Mexican witness Feroba had said. The court admitted this, it seems, upon the theory that Weisiger was contradicting Kyle as to what occurred. Kyle testified that he and Weisiger understood some of the Mexican language, and that he, Kyle, understood Feroba to say to Saens that the defendant was invited from his horse by the deceased. To meet this, under the qualification of the bill, the court permitted Weisiger to testify what Saens told him, Weisiger. Weisiger was not testifying what he understood Feroba to say but only as to what Saens told him that Feroba said. Kyle had testified what he understood Feroba to say and not what Saens had told him. As this matter came up, it was not admissible in the connection in which it was offered. If the matter is presented in the same way upon another trial the testimony should be rejected. The impeachment of Saens might be a different proposition. We, therefore, hold that as the matter is presented the statement of Saens would not be admissible unless it became a matter of impeachment of Saens. The statement of Saens would not be original testimony.

At the request of appellant we review this question. We hold that as the bill is presented the testimony of Weisiger as to what Saens stated

was not original testimony; it might or might not be impeaching, owing to the circumstances. Inasmuch as the case is reversed on other questions, we call attention to this so it may not occur in this manner again.