### Wyatt Rodgers v. The State.

#### No. 5286.   Decided May 21, 1919.

**Murder—Manslaughter—Charge of Court—Provocation.**

  Where, upon trial of murder, and a conviction of murder, it appeared from the evidence that there were other persons who acted in conjunction with the deceased in giving provocation, the court's charge on manslaughter that it is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation caused by some person other than the party the defendant intended to kill, the same was reversible error.  Following House v. State, 75 Texas Crim. Rep., 338, and other cases.

Appeal for the District Court of Shelby.   Tried below before the Hon. Daniel Walker.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Sanders & Sanders* for appellant.—On question of manslaughter: Wilson v. State, 70 Texas Crim. Rep., 355;   Love v. State, 71 id., 79; Leggett, 62 id., 99; Watson, 50 id., 171; Luttrell v. State, 64 Texas Crim. Rep., 411, 143 S. W. Rep. 628 and cases cited in opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, Judge.—The appeal is from a judgment condemning appellant to confinement in the penitentiary for ten years for the offense of murder.

The homicide took place at the residence of Ernest Owens. Ernest Owens and appellant's brother, Beeman Rodgers, married sisters and the wife of Beemen Rodgers was at the home of Ernest Owens when the appellant and his brother Beeman Rodgers and the wife of appellant stopped at the home of Owens on their way to Shreveport on a pleasure trip, traveling in an automobile.  The purpose of stopping seems to have been in order that the wife of Beeman Rodgers could join them and accompany them on the trip.   It was near Christmas time and there were preparations in progress at Ernest Owens' residence for a Christmas gathering and the appellant and his companions alighted from the car in which they were riding and went into the residence, and while there a difficulty took

place.  The evidence is conflicting touching the beginning of the difficulty.  It seems, however, to have been immediately preceded by a quarrel between Beeman Rodgers and his wife.  Appellant said that during this quarrel Buford Owens, a brother of Ernest Owens, struck Beeman Rodgers over the head with something that looked like an axe-handle, and said "When he did, Beeman just caught the post and went in on the gallery, and the whole bunch covered him.  I started up the steps, and as I went in they turned on me, and I didn't see Beeman any more until the fight was out; the whole bunch, women and all, came right on me. I was in the fight all through the last part of it; I was not in it when it started."  Several witnesses testified to facts in a general way, in substance, like the appellant.  There was evidence that in the fight one of the assailants of the appellant and his brother used a harrow tooth which was described as a piece of steel with which wounds could be inflicted.  It was made clear that after the difficulty the appellant and his brother were examined by a physician who said that he found six lacerated or torn wounds and one smooth cut wound on appellant's head, nearly all of them going to the skull; that they were treated and dressed by him ten or twelve times and he said that Beeman Rodgers exhibited wounds of substantially the same number and character except that upon Beeman's body there was a superficial wound in the nature of a scratch and his shirt was torn or cut in the vicinity of this wound.  A very short time after this difficulty the appellant and his wife and Beeman Rodgers and his wife and the driver of the car went to the automobile and started to leave and just about the time the car started a pistol shot was fired from the automobile which killed a child that was in the house, and the prosecution grows out of this homicide.

Quite a conflict in the evidence developed touching the firing of the shot, the State's witnesses presenting the theory that it was maliciously and purposely fired by the appellant.  His own testimony was to the effect that it was accidental.  Other witnesses for the State and defendant testified to facts which raised the issues of self-defense and manslaughter, and the theory of negligent homicide was also presented to the jury.  The uncontroverted evidence of both the State and the appellant was to the effect that immediately after the fight ended that Ernest Owens laid down the harrow tooth which he had used in the fight and picked up and loaded his shotgun and walked out on the front porch and said to appellant's brother, "Don't come back on here or I will kill you."  And that he remained on the porch while the appellant and his party were walking to the car and getting in the car, until the shot was fired. Both the appellant and his brother were quite bloody immediately before they started to get in their car.  Appellant claimed that his brother laid a pistol down in the car and that about that time he heard some one exclaim: "Look out, he is going to shoot;" that

he and his brother both grabbed for the gun and in the scuffle it was discharged; that hearing the exclamation mentioned he thought his brother was about to shoot and he grabbed for the gun to prevent him from doing so.

In charging on manslaughter the court embodied the following: "It is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation caused by some person other than the party the defendant intended to kill." The appellant in a timely and specific manner objected to this phase of the charge. Prior to the conflict the parties were friends; there was no difficulty furnishing "other provocation," save the fight which took place a few moments before the fatal shot was fired. When it was fired, appellant was suffering from the serious injuries received in the fight, and the incidents of that encounter were not, as a matter of law, to be eliminated in determining the existence of adequate cause, nor were the conditions such as to make the homicide murder, if unlawful and upon provocation caused by some other person than the party appellant intended to kill. His intention, from the State's standpoint, was to kill Ernest Owens who at the time was armed and near at hand; but in the difficulty in which appellant and his brother were injured, Ernest Owens, Buford Owens, and, according to some of the evidence, others took part, and the provocation upon which appellant acted in firing may have arisen from the acts of any or all of his assailants. Discussing a similar state of facts the court said: "We understand the rule to be that where there is evidence that some other person or persons acted in conjunction with the deceased in giving provocation, it is error for the court to prevent the consideration by the jury of the provocations given by some other party than the party killed." House v. State, 75 Texas Crim. Rep., 338.

The condition of appellant's mind as bearing on the issue of manslaughter was to be determined from the evidence showing the entire transaction. The charge complained of, we think, was an unwarranted restriction on appellant's right under the law of manslaughter, and was one which has been held material error in the case mentioned and in Garcia v. State, 70 Texas Crim. Rep., 485; Byrd v. State, 39 Texas Crim. Rep., 609; Stacey v. State, 48 Texas Crim. Rep., 95.

Judgment is reversed and the cause remanded

*Reversed and remanded.*