### ALVIN TOWNSLEY V. THE STATE.

No. 9387. Delivered January 13, 1926.

Motion for Rehearing withdrawn April 2, 1926.

**1.—Murder—Special Venire—How Drawn—"Open Court" Construed.**

While the statute provides that a special venire shall be drawn in "open court," where the court, then in session in the court house at the county seat, has the special veniri drawn in his presence in the clerk's office, this is held a sufficient compliance with the constitution and statutes. See Atwood v. State, 96 Tex. Crim. Rep. 249 and other cases cited.

### 2.—Same—General Reputation—Latitude of Inquiry—On Cross-Examination.

Where appellant, upon his trial, introduced character witnesses, who testify as to his general reputation as a peaceable, law-abiding citizen, it is not error to permit the state on cross-examination of such witnesses to ask them what other difficulty of appellant, if any, such witness had heard of, no effort being made to show the details of such other difficulties. This character of cross-examination is presumable, not to establish the truth of such charges, but to test the credibility of the character witness. See Underhill on Crim. Ev. 3d Ed. Sec. 82. Following Johnson v. State, 92 Tex. Crim. Rep. 582.

### 3.—Same—Evidence—Res Gestae—Properly Admitted.

Where on a trial for murder, it being shown that appellant assaulted one J. D. Fields, with a pistol, who ran from appellant, and then shot and killed Charley Fields, there was no error in permitting a witness to testify that within about one minute of the killing of Charley Fields, and while J. D. Fields was being pursued by appellant who was firing upon him, said J. D. Fields exclaimed, "My God, isn't it awful. He has killed poor Charley, the best friend I ever had." Such testimony was res gestae, and having been admitted without objection the court properly refused to withdraw it from the jury.

### 4.—Same—Cross-Examination—Argumentative—Harmless, if Error.

Where a witness, apparently antagonistic to the state, on cross examination by state's counsel is asked certain questions, which may be subject to criticism that they are argumentative such questions would not be grounds for reversal of the cause, where no serious injury is shown to appellant.

### 5.—Same—Cross-Examination—Scope of—Harmless Errors.

Where objection is made to the cross-examination of appellant and his witnesses, and the bills of exception reserved, discloses, that some of the objections were sustained, some of the answers withdrawn, and the questions admitted were not of such a character as to show a purpose on the part of the district attorney to prejudice appellant's case by asking improper questions, no reversible error is shown.

### 6.—Same—Rule, as to Witness—Discretion of Court—Not Abused.

Where during the course of the trial, appellant caused a witness in the court room to be summoned and placed under the rule, and thereafter said witness was called and used by the state, no abuse of discretion upon the part of the court in permitting the witness to testify is shown, and no error is presented.

### 7.—Same—Evidence—Order of Its Introduction—Rule Stated.

In this state the strict rule with reference to direct and rebuttal testimony is not enforced in the trial of a criminal case, and the objection that a witness introduced by the state, after the defendant had rested his case, is not in rebuttal, will not be sustained.

### 8.—Same—Evidence—Charge of Court—On Manslaughter—Held Correct.

Where appellant had engaged in a difficulty with one Bright a short time before the homicide, in which difficulty deceased did not participate,

there was no error in the court's failure to charge the jury that if in the difficulty with Bright appellant had received a blow, which caused him pain, that said injury so received in the difficulty with Bright would in law be deemed adequate cause to reduce the killing of deceased to manslaughter. Distinguishing Stacy v. State, 48 Tex. Crim Rep. 95 and other cases cited by appellant.

### 9.—Same—Continued.

The rule is very clearly stated by Judge Davidson in House v. State, 171 S. W. 206 in the following language: "We understand the rule to be that where there is evidence that some other person or persons acted in conjunction with deceased in giving provocations, it is error for the court to prevent a consideration by the jury of the provocation given by some other person than the party killed." The application of this rule is not called for by the facts in this case.

### 10.—Same—Continued.

The court properly charged the jury that although the law provides that the provocation must arise at the time of the killing, yet in determining the adequacy of such provocation it was the duty of the jury to consider all of the facts and circumstances in the case. This permitted the jury to consider all the facts before them, incident to the former difficulty with Bright, upon the general issues of manslaughter.

ON REHEARING.

### 11.—Same—Motion for Rehearing Withdrawn.

Where appellant, by his affidavit in writing, has signified his desire to withdraw his motion for rehearing and his counsel make no objection to the granting of the request, the motion for rehearing is therefore withdrawn, and mandate will issue upon the original judgment of affirmance.

Appeal from the Criminal District Court of Williamson County. Tried below before the Hon. James R. Hamilton, Judge.

Appeal from a conviction of murder, penalty assessed at life imprisonment in the penitentiary.

The opinion states the case.

*J. G. Taulbee* and *W. H. Nunn* of Georgetown, for appellant.

*Dan Moody,* District Attorney; *Wilcox & Groves* of Georgetown; *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney for the State.

HAWKINS, JUDGE.—On the 17th day of October, 1924, appellant shot with a pistol and killed C. W. (Charley) Fields. A conviction for murder resulted, punishment being assesed at life imprisonment in the penitentiary.

Appellant urged that the venire be quashed, claiming it was not drawn in "open court" as required by Article 592, C. C. P. (1925 Revision) Art. 660a, Vernon's 1922 Supp. The article in question provides that "the clerk, in the presence of the judge, in open court, shall draw" the venire. In the present instance the court was not adjourned, recessed or in vacation, but when the venire was to be drawn, the judge went to the clerk's office in the court house about thirty feet from the judge's bench in the court room and in the clerk's office the clerk drew the venire in the presence of the judge. Section 7, Art. 5, Constitution of Texas, provides that the district judges shall hold the terms of their court at the county seat of the various counties. To the same effect is Art. 1396, Vernon's C. S. (Art. 1602, 1925 Rev. C. S.) Article 1397 Vernon's C. S. (1603, 1925 Rev. C. S.) requires the commisioners' court to provide a court house for the county. The proceedings of court usually occur in the particular room set apart by the commisioners for holding the sessions of court in, but we think if the court is actually in session, that is "open" as distinguished from vacation, recess or adjournment, an act of the court would not be invalid solely because done in the clerk's office in the court house, and not in the court room. Atwood v. State, 96 Tex. Cr. R. 249, 257 S. W. 563. Block v. Kearney (Cal. 64 Pac. R. 267; Reed v. State, 147 Ind. 41; Courtney v. State, 5 Ind. App. Ct. 356; Scott v. State, 133 Ala. 112; Smith Admr. v. Jones, et al. 23 La. 43.) From Reed v. State, supra, we quote:

"If in doing so (making orders in place other than the regular court room) no legal or constitutional right of the accused is infringed, and it is manifest that no substantial injury has been done, error is not available if it exists."

Bills of exception 18, 19, 20, 21, 22, 23 and 24 set out a question claimed to have been propounded by the district attorney on cross-examination to certain named witnesses who had testified for appellant that his general reputation as a peaceable, law-abiding citizen was good. The question objected to is identical in the several bills. If an answer was given by any of the witnesses the bills fail to show it. The objection, however, appears to be to the form of the question upon various grounds, one being that it was an effort on the part of the state to show other offenses against appellant than the one on trial; another, that the question was not based upon any fact. There is no certification of the truth of the matters contained in the objection, but they appear in the bills as grounds of objection only. This is not sufficient.

(See many authorities collated under Section 209 Branch's Ann. P. C.)   In qualifying these bills the learned trial judge calls attention to the fact that each bill embodies identically the same question as having been asked of seven different witnesses and says that in this respect the bills are not correct.   He further explains the bill by saying that appellant offered a number of witnesses who testified that prior to the time of the homicide which was the basis of this prosecution appellant enjoyed a good reputation as a peaceable, law-abiding citizen, and that the state offered equally as many who testified to the contrary; that in the trial evidence came into the case of a number of difficulties in which appellant had been involved, that the state asked no question about the details of these difficulties and that none of the details were brought into evidence except as appellant first went into the matter of detail; that the question asked by the district attorney of the various witnesses was as to what difficulty of appellant, if any, the particular character witness had heard, and then propounded to such witness the question as to whether he would say appellant's reputation as a peaceable, law-abiding citizen was good notwithstanding he had heard of such prior difficulty in which appellant had been engaged.

A witness to the good character of accused may be asked upon cross-examination whether he had heard rumors of particular and specific charges or acts of accused inconsistent with the character he was called to prove, not to establish the truth of such charges, but to test his credibility and enable the jury to weigh his evidence.   Underhill's Cr. Ev. 3rd Ed. Sec. 82; Johnson v. State, 92 Tex. Cr. R. 582, 241 S. W. 484; Rose v. State, 92 Tex. Cr. R. 560; 244 S. W. 1009; Williamson v. State, 74 Tex. Cr. R. 289, 167 S. W. 360; Blue v. State, 106 S. W. 1157; other authorities are listed under Sec. 184, p. 117, Branch's Ann. Tex. P. C.   Under the court's explanation no error is shown by the bills under discusion.

Witnesses testified that after the shooting was over J. D. (John) Fields said to witness, "My God, isn't it awful!   He has killed poor Charley, the best friend I ever had."   This evidence went before the jury without objection.   Later appellant requested its withdrawal on the ground that it was not res gestae.   The testimony shows that appellant assaulted J. D. Fields, striking him over the head with a pistol so violently that blood flowed freely, and then shot and killed C. W. (Charley) Fields; that John Fields fled from the scene and was pursued by appellant who fired one or more shots at him; that John Fields had his hands raised above his head

as he was fleeing; that he would wipe the blood from his face and again raise his hands. It was under these conditions the statement was made, perhaps not more than a minute after the last shots were fired and within from 30 to 60 feet of the place of the killing. It was the spontaneous outcry of a participant and clearly res gestae. If part was immaterial it does not appear harmful.

Complaint is made in bill number six of certain cross-examination of appellant's witness Caesar Rogers as being argumentative in character. The killing occurred about four-thirty in the afternoon. The state had introduced testimony to the effect that at the time of the killing appellant was under the influence of liquor. Rogers had testified that between two-thirty and three-thirty he was with appellant and did not at that time detect the odor of liquor on his breath. On cross-examination counsel for the state asked him if appellant did not have time to become intoxicated between three-thirty and the time of the killing. The qualification to the bill recites that witness' answer to this question was unintelligible and manifested an unfriendly disposition towards the state; that the district attorney then inquired if appellant had a pistol at the time witness claimed to have been with him, to which witness replied he did not know. The district attorney then asked him if later a man was killed by appellant with a pistol at a time when the odor of liquor was detected on his breath if it was not a fact that appellant must have secured the pistol and the liquor after the witness saw him, which the witness answered in the affirmative. The last question may have been somewhat argumentative, but we think the bill presents no such serious matter as calls for a reversal.

Bill of exception number eight, taken in connection with the explanation thereto, shows that witness Shell had testified as a character witness for appellant that his general reputation as a peaceable, law-abiding citizen was good. Upon cross-examination it developed that he had contributed money to employ attorneys to represent accused. The witness was then asked by the district attorney if he had heard or knew of prior difficulties in which appellant had been involved. It had already appeared in the trial that appellant had shot a Dr. Price. Shell was asked by the district attorney if notwithstanding he had heard of the difficulty between appellant and Dr. Price he would still say appellant enjoyed a good reputation as a peaceable, law-abiding citizen. Witness did

not answer the question but said Dr. Price was a much larger man than appellant. In response to this statement the district attorney asked him if the .45 caliber pistol used by appellant did not overcome the difference in weight, the evidence having shown that appellant used a .45 caliber pistol. When objection was interposed to the last question the district attorney did not insist upon an answer but abandoned the question, and it was not answered. This bill, in connection with the qualification, presents no error.

We have given the substance of bills of exception six and eight. Very similar in character are bills seven, nine, ten, eleven, twelve, thirteen, fourteen and twenty-five. They all complain of the cross-examination of appellant or some of his witnesses. The court's qualification becomes a part of the bill. We do not regard them as of sufficient moment to demand separate discussion. In some instances questions asked by the district attorney were abandoned when objection was interposed, in others objections were sustained and the jury instructed to disregard the question. We regard none of the matters of such grave consequence as would demand a reversal. Neither do we believe they show a persistent or studied purpose on the district attorney's part to prejudice appellant's case by asking improper questions, as contended by appellant, and therefore application of the rule invoked by appellant in such a case is not called for.

Complaint is made in bill number 15 of the action of the court in permitting the state to use one Sharp as a witness, upon the ground that the "'rule'" had been invoked and Sharp had been in the court room and heard some of the other witnesses testify. An investigation of the matter developed that Sharp had not been summoned as a witness. It appears not to have been known to either party that he knew any facts relative to the case until some witness on a previous day had mentioned his name, whereupon appellant's counsel remarked that he desired Sharp as a witness. He was summoned and appeared in court the next morning. The bill reveals no abuse of discretion upon the part of the court in permitting the testimony of said witness to go to the jury.

By bill of exception 16 complaint is made that after the state had rested its case and appellant had introduced his testimony and rested that the state called one Mills as a witness, the objection being that Mills' testimony was not in rebuttal. The strict rule with reference to direct and rebuttal testimony is not enforced in this state in the trial of criminal cases and even if the testimony of Mills had not been in rebuttal the bill

would have presented no error. However, the testimony of Mills appears to have been in direct rebuttal of appellant's contention that immediately preceeding the shooting of C. W. Fields he received a blow back of the ear from one of the Fields brothers, which blow caused him pain and raised a considerable knot. Mills testified that he witnessed the fight between appellant and Bright some time prior to the homicide and saw Bright deliver a blow which struck appellant behind the ear and saw the knot on the back of appellant's head immediately after this fight, and before the killing. It occurs to us this was directly in rebuttal of appellant's claim that he received the blow from one of the Fields brothers.

On the day of the homicide a football game was being played at Georgetown between the high school team of that place and the high school team of Giddings. J. D. and C. W. Fields lived at Giddings and were present at the game as spectators, C. W. Fields having a son on the Giddings team. Both of the Fields were in the grandstand. Bright, a young man 22 years of age, was coach of the Giddings team. During the progress of the game a fist fight occurred between Bright and appellant. The state's evidence shows that appellant was the aggressor and wholly to blame for this encounter. Appellant admits passing the first blow, but claims it was because of a vile epithet used towards him by Bright. The latter denies the use of any such epithet and others present heard none used by Bright. Parties connected with or in sympathy with the Georgetown team importuned appellant not to have further trouble, as it would result in the forfeiture of the game to Giddings. Appellant promised to have no further trouble during the game, but said they would settle the fight after the game was over. Neither J. D. nor C. W. Fields were present when the encounter betwen Bright and appellant occurred, but seeing the commotion they left the grandstand and went to ascertain the cause of the disturbance, C. W. Fields arriving before J. D. Fields. The latter says he thought the trouble was between some of the players on the teams was what induced him to go and make inquiry. When C. W. Fields arrived at the place where the fight occurred he asked what the trouble was about. The state's witnesses testify that appellant told him it was none of his "G— d—— business"; that deceased then said he was only interested in knowing what caused the disturbance; that appellant again replied in effect that it was none of his business and that Fields could not make him (appellant) tell; that Fields replied, he guessed he could, but was not there for that purpose, that he was only desirous of knowing what had caused the fight. About this time J. D.

Fields walked up and remarked that they were not there to have any trouble, but only came to have a good time at the game. Appellant's version of the latter part of this statement is that J. D. Fields said, "Not let's have any trouble, we will see him later." A few minutes after the fight between Bright and appellant the latter left the football field, saying to a witness as he passed, "Stay with me boys and I will whip the whole damn bunch." He went to town, secured a pistol and returned, being gone perhaps ten or fifteen minutes. As he got out of his car near one of the gates to the football grounds the Fields brothers left the grounds by this same gate. J. D. Fields was walking a few feet in advance of his brother. Appellant struck J. D. Fields over the head with his six-shooter, knocking him to his knees and then shot and killed C. W. Fields. It was appellant's contention that one of the Fields brothers said, "There he is now," that both advanced on him, and one struck him; that from their conduct he thought his life was in danger. On the other hand, the state's evidence is that neither J. D. Fields nor deceased did or said anything to appellant. Under this state of the record it was appellant's contention that upon the issue of manslaughter the court should not have charged that the provocation must arise at the time of the killing and not be the result of a former provocation, or of a provocation given by a person other than the party killed. In this connection he requested two special charges to the effect that if it appeared to appellant that the Fields brothers or either of them was renewing the difficulty appellant had theretofore engaged in with Bright, and that in the difficulty with Bright appellant had received a blow which caused him pain, that said injury so received in the difficulty with Bright would in law be deemed adequate cause to reduce the killing of C. W. Fields to manslaughter. In support of this proposition appellant refers us to Stacy v. State, 48 Tex. Cr. R. 95; Brown v. State, 54 Tex. Cr. R. 121; Garcia v. State, 70 Tex. Cr. R. 485, 156 S. W. 939; House v. State, Tex. Cr. R.     , 171 S. W. 206. An examination of the authorities referred to all reveal that in the prior difficulty which had occurred between accused and other parties that the party killed was also present and in some way participated, therefore the provocation could legitimately be construed as provocation given by the party killed. The rule is very clearly stated by Judge Davidson in House v. State, supra, in the following language:

"We understand the rule to be that where there is evidence that some other person or persons acted in conjunction with deceased in giving provocations, it is error for the court to

prevent a consideration by the jury of the provocations given by some other person than the party killed."

The application of this rule is not called for by the facts of the present case. It is apparent from the record that neither of the Fields brothers were present or had anything to do with the fight between appellant and Bright. If either of them expressed an opinion relative to who was to blame the record does not reveal it. Their appearance upon the scene after it was over was simply to ascertain what had caused the disturbance. Even if J. D. Fields had said, "We will see him later," as claimed by appellant, all the evidence shows that in the entire conversation both of the Fields disclaimed any purpose of desiring to have trouble. It is in testimony that during the conversation between the Fields and appellant nothing in their conduct evinced any tendency or desire to have a fight or trouble. We think the evidence does not raise the issue sought to be submitted in the special charges refused and that the court committed no error in this respect. The jury was instructed that, although the law provides that the provocation must arise at the time of the killing, yet in determining the adequacy of such provocation it was the jury's duty to consider all the facts and circumstances in evidence. This permitted the jury to consider all the facts before them incident to the former difficulty with Bright upon the general issue of manslaughter.

Bills of exception 30, 31 and 32 complain of certain argument of counsel representing the state. We think a detailed discussion not called for. None of the argument appears to be of that character which demands a reversal.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING

MORROW, PRESIDING JUDGE.—Appellant, by his affidavit in writing, has signified his desire to withdraw his motion for rehearing in the above styled cause.

We learn from the counsel for the appellant that they make no objection to the granting of the request.

The request to withdraw the motion for rehearing is therefore granted, and mandate will issue upon the original judgment of affirmance.

*Motion withdrawn.*