**Paul THIBODEAUX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–199–CR.**

Court of Appeals of Texas,
Austin.

June 17, 1987.

Etta Warman, Joseph W. Barbisch, Austin, for appellant.

Ronald Earle, Dist. Atty., Terrence Keel, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

Paul Thibodeaux appeals a judgment of conviction for murder. The jury found him guilty and assessed punishment at ninety-nine years imprisonment. Tex.Pen.Code Ann. § 19.02 (1974). We will affirm the judgment.

Although the sufficiency of the evidence is not challenged, the evidence is pertinent to an understanding of Thibodeaux's points of error. Thibodeaux and Elizabeth Harris lived together for several years. During that time, Harris had four children and Thibodeaux believed he was the father of all four. According to Thibodeaux, on April 7, 1986, he and Harris argued heatedly and Harris told him that he was not the father of her youngest child, a two-month old baby girl.[1] The revelation devastated Thibodeaux, and angered him to the point that he took the baby, walked with her 1.1 miles, and then killed her. Harris saw Thibodeaux again about 30 minutes later when he returned to the apartment crying, saying that he had killed the baby. Police

---

1. Because Thibodeaux's second point of error alleges his testimony raised the issue of voluntary manslaughter, we recite the events according to his testimony. We note here, however, that Elizabeth Harris testified there was no argument on April 7; Thibodeaux merely took the baby when Harris was out of the room.

apprehended Thibodeaux at a nearby church where he wandered after leaving Harris. The baby's body was discovered about five days later after an extensive search.

Thibodeaux brings two points of error: (1) Thibodeaux's attorney rendered ineffective assistance of counsel because he failed to seek an independent psychiatric examination of Thibodeaux; and (2) the trial court erred in failing to charge the jury on voluntary manslaughter.

### Independent Psychiatric Examination as Ineffective Assistance of Counsel

Thibodeaux contends the evidence presented at trial shows the plausibility of an insanity defense and that trial counsel's failure to secure the appointment of a psychiatrist deprived him of his only defense. There was no hearing on ineffective assistance; we are merely referred to the record of trial.

■ In order to show he was deprived of effective assistance of counsel, Thibodeaux has the burden to prove that (1) trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Butler v. State,* 716 S.W.2d 48 (Tex.Cr.App. 1986); *Moore v. State,* 700 S.W.2d 193 (Tex.Cr.App.1985). In our opinion, Thibodeaux fails to meet either part of the *Strickland* test. The first requires that counsel's representation fall below the objective standard of reasonableness. There is a strong presumption that counsel rendered effective assistance and exercised reasonable professional judgment. *Strickland, supra,* 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066. We cannot say the presumption has been overcome. From Thibodeaux's testimony it appears he *was* examined by a psychiatrist; however, no report of that examination or its contents is before us. It thus appears that Thibodeaux's trial counsel merely made a tactical decision not to pursue an insanity defense further.

■ Even *if* we assume trial counsel acted unreasonably in failing to obtain anoth-

er examination, the record does not show that Thibodeaux was prejudiced in consequence. In order to prove prejudice from ineffective assistance of counsel, the defendant must show that there is a reasonable probability that the result would have been different but for counsel's unprofessional errors. *Strickland, supra* at 694, 104 S.Ct. at 2068. We find in the record nothing to show the existence of evidence implying the matters raised by Tex.Pen. Code Ann. § 8.01 (1974), defining "insanity" as an affirmative defense. Harris testified that when Thibodeaux returned to the apartment he "didn't look real good"; that he was drunk; that he was "crying and carrying on"; that he was "acting crazy"; and that he had never acted that way before. Various police officers who observed Thibodeaux shortly thereafter testified that he appeared extremely upset and emotionally distraught; that he was shaking and crying; that he appeared to be in a state of shock; and that at least some of this conduct appeared to be calculated to invoke the sympathy of police officers. One police officer testified that he recommended Thibodeaux be interviewed by a psychiatrist because he appeared depressed, and this evidently was done. In our view, this evidence shows only the remorse and guilt that would ordinarily attend the death of one's child by one's own hand. *See Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980).

Thibodeaux has failed to sustain his burden to prove ineffective assistance of counsel. We therefore overrule his first point of error.

### Charge on Voluntary Manslaughter

■ In his second point of error, Thibodeaux complains the trial court erred in refusing to charge the jury on the lesser-included offense of voluntary manslaughter. An issue on a lesser-included offense must be submitted to the jury where evidence from any source, including the testimony of the defendant, raised the issue. *Schoelman v. State,* 644 S.W.2d 727, 732–33 (Tex. Cr.App.1983); *Moore v. State,* 574 S.W.2d

122, 124 (Tex.Cr.App.1978). The credibility of the evidence and whether it is controverted may not be considered in determining whether the charge should be given. *Id.* Thibodeaux argues his own testimony constitutes some evidence of voluntary manslaughter sufficient to require submission of the issue to the jury. He refers to the following:

> I felt like—when she had gave me the thought that the baby wasn't mines [sic], I thought it was just play—she was playing. And then she was really serious and looking in my eyes and things, telling me the baby wasn't mines [sic]. And I felt like I lost everything in life. I got so angry, I just lost it.

In Tex.Pen.Code Ann. § 19.04(a) (1974), voluntary manslaughter is defined as murder, except that the death was caused while the defendant was "under the immediate influence of sudden passion arising from adequate cause." "Sudden passion" is defined in § 19.04(b):

> ... passion directly caused by and arising out of provocation by the individual killed or *another acting with the person killed* which arises at the time of the offense ... [emphasis added].

The emphasized language points out the most obvious defect in Thibodeaux's theory, and the one upon which the State initially relies. Under the evidence, the provocation came from Harris while the "person killed" was a two-month-old baby whose only "action" was to lie on a blanket in the apartment. Thus, the threshold question which must be answered is whether Harris was shown to be "acting with" the infant victim within the meaning of § 19.04(b). In determining the answer, we look to case law involving the same or similar statutes.

In *Garcia v. State*, 70 Tex.Cr.R. 485, 156 S.W. 939 (1913), cited by both parties to this appeal, two men assaulted the defendant. One was killed by the defendant, and in charging the jury on voluntary manslaughter, the trial court instructed the jury to consider only the provoking acts of the deceased. The Court of Criminal Appeals reversed, holding where two parties act together to assault the defendant, the act of one is the act of the other. *Garcia, supra,* 156 S.W. at 941. In such a case, held the Court, the acts of provocation by one other than the victim are not provocation by another party; rather they are the acts of either and both the parties so acting. *Id. Garcia* was followed in *Brookerson v. State*, 92 Tex.Cr.R. 67, 242 S.W. 234 (1922), where two brothers, armed with knives, pursued the defendant who shot and killed one of them. Again, the Court held that the acts of both brothers should have been considered by the jury in determining whether the defendant acted under the influence of sudden passion. As in *Garcia*, both the parties, the deceased and another, were "acting."

In *Schoelman v. State*, 644 S.W.2d 727 (Tex.Cr.App.1983), the defendant shot and killed the proprietor of a bar. The evidence showed the defendant had been involved in a heated argument with another patron while on the deceased's premises. The deceased unsuccessfully attempted to calm the defendant, and finally resorted to slamming the door in defendant's face, blocking her entrance to the premises and sheltering the other patron inside. The defendant gained entrance and shot the deceased. On appeal from a trial-court judgment convicting defendant, the Court of Criminal Appeals held that the trial court erred in failing to charge the jury on voluntary manslaughter because there was some evidence that the accused was acting under the immediate influence of sudden passion. *Id.* at 733. The Court, in discussing evidence of "immediate influence," addressed affirmative acts of both the deceased and the patron initially involved in the argument with the defendant. Like *Garcia* and *Brookerson*, there was a concert of action between two whose actions were considered as provocation of the defendant.

Finally, the Court of Criminal Appeals addressed the issue here presented in *McCartney v. State*, 542 S.W.2d 156 (Tex. Cr.App.1976). In that case, two men made amorous remarks toward the decedent in the presence of defendant. The decedent and the defendant had lived together from time to time. The Court held the remarks may have provoked the defendant; how-

ever, such provocation could not be considered for the purpose of a voluntary manslaughter charge absent evidence showing the two men were acting with the deceased. *Id.* at 159.

We fail to see how Harris was "acting with" the infant to provoke the defendant. Unlike *Garcia, Brookerson,* and *Schoelman,* the sole *actor* in the present case, under Thibodeaux's testimony, was Harris. The child under that testimony was no more than the *object* of her remarks. We overrule appellant's second point of error.

The judgment of the trial court is affirmed.