. JIM HILL v. THE STATE.

*No. 917. Decided January 22nd, 1896.*

1. **Charge in a Felony Case, When Not Excepted to.**

The rule is that notwithstanding a charge in a felony case be not excepted to, yet, if it contains such error as would operate to the prejudice of the defendant, it will constitute reversible error.

2. **Murder—Charge—Resistance to Arrest—Self-Defense.**

Where defendant had shot another party, and deceased seeing him go by his place of business with a doctor, said to him, "Wait a moment, Jim," or "Stop a moment,

Jim," whereupon defendant drew his pistol and deceased fired upon him, when defendant fired and killed deceased; and the court charged upon the law of homicide in resistance to an arrest. Held: That though such charge was not called for by the evidence, the same was harmless in view of the fact that when defendant was accosted and asked by deceased in a peaceful manner to stop a moment, he turned upon him and made demonstrations to draw his pistol, and, though deceased asked him to desist, did draw and compel deceased to stand on his own defense; and especially does such a charge become harmless where the court has given a proper charge on self-defense applicable to the facts.

### 3. Same.

A defendant would be guilty of murder in the first degree if, anticipating an arrest, he should prepare himself with a deadly weapon and calmly and deliberately form the intent to kill, and kill an officer attempting to arrest him.

### 4. Erroneous Charge—Practice on Appeal.

Where an abstract erroneous charge has been given by the trial court, to which no exception was reserved, the court on appeal will look to the charge as given, and the facts of the case, to determine whether such charge was calculated to injure the rights of appellant; and, if not, it will not constitute reversible error. Following, McMillan v. State, ante, p. 370.

APPEAL from the District Court of Polk. Tried below before Hon. L. B. HIGHTOWER.

This appeal is from a conviction for murder in the first degree, the punishment being assessed at death.

The facts are sufficiently stated in the opinion.

[No briefs for appellant.]

*Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—The appellant in this case was tried under an indictment charging him with murder, was convicted of murder in the first degree, and his punishment assessed at death, and from the judgment of the lower court he prosecutes this appeal. The court gave to the jury a charge on murder in the first degree, murder in the second degree, manslaughter, and self-defense, and also gave a charge to the jury on the right of a private person to arrest a person guilty of a felony committed in his presence or within his view. No exceptions were reserved to the charge of the court, and we have examined the record carefully to ascertain if said charge, in any part thereof, contains such error as would operate to the prejudice of the defendant, the rule in such case being that, notwithstanding no exception was reserved, this court will reverse on account of said erroneous prejudicial charge. The facts of this case, stated briefly, show that, early in the morning of the day of the homicide, somewhere about 8 o'clock, the defendant declared to a comrade, at the sawmill, where they were working, that he was going to the house where he slept, some 200 yards distant, and get his pistol, and kill Bill McLeod and Ella Mitchell. (The occasion of such determination on his part is not disclosed). He went, however, to the shanty mentioned, and from thence came to the house where Bill McLeod and Ella Mitchell were, and immediately began a difficulty with McLeod. Three or four shots were fired by him, one taking effect in McLeod's head, producing a scalp wound, and another also inflicting a scalp wound

on one Pasley, who interfered to prevent the difficulty. During the melee, Ella Mitchell fled to another house, near by. After this difficulty, the defendant returned to the house where he slept, came out directly, and then continued in search of Ella Mitchell. He went to the house where she had entered and insisted on admittance. Two negro women there attempted to prevent his entrance. He threw one aside, and, the other still clinging to him, he drew his pistol on her, and told her that if she did not turn him loose and let him go in the house, he would kill her. She turned him loose, and said she would go and tell Mr. Martindale, and see if he could not make him get out of her house. He went in the house, but, in the meantime, Ella Mitchell had fled from there, and made her escape. He then went on towards the store, which was deceased's place of business. On the way, he met Lilly Hill, a witness, who said to defendant, that he had better not go to the store; that they would arrest him. To which defendant replied: "I am not going to be arrested by no God damned white man, and no God damned officer, until I kill Ella Mitchell and William McLeod. Then they can burn my God damned body." The defendant, it appears, then went to the office of Dr. Herrington, which was near the store of the deceased, and told the doctor that he had shot Pasley accidentally; that he was intending to kill McLeod and Ella Mitchell. The doctor and defendant walked out of said office, and then down the platform, and passed the store of the deceased. The deceased came out on the gallery, walked on behind them, and called to the doctor to stop. His language, as testified by several witnesses, was as follows: "Oh, Dock," or "Wait a minute, Dock," or some such expression as that. The doctor looked around, slightly checked up, and Morris, the deceased, still came on. The doctor started on again. Defendant, in the meantime, having got a step or two ahead of him, he (deceased) then said to defendant: "Wait a moment, Jim," or "Stop a moment, Jim." As deceased said this, the defendant turned around, put his hand in his bosom, and shoved his hand on down, inside his shirt, to the waistband of his pants. He had turned, facing deceased—Morris. Morris said: "Stop, Jim; don't do that;" or "Don't pull your pistol, Jim." The defendant kept working at his pistol, which seemed to have hung, some way, in the waistband of his pants; and, just about the time he pulled his pistol, Morris, deceased, jerked his pistol, and fired. The defendant then fired. The shots were almost together, but Morris' first, just enough between the shots to tell that there were two shots, or reports. Morris missed the defendant. Defendant's shot took effect in Morris' head. Morris fell immediately. The defendant then ran up to him, fired one other shot at him, and then ran away and made his escape. The testimony of the other witnesses as to the occurrences immediately attending the homicide was, in substance, about the same as has been given from the testimony of the witness, Herrington.

The only possible error that could be complained of in the charge of the court is that given on the subject of arrest by a private person. This charge follows Art. 226, Code Crim. Proc. The court, in effect,

charged the jury, that if defendant made˙ an unlawful assault upon William McLeod and Jim Passley, or either of them, with a pistol, with intent to murder them, or either of them, that then the defendant was guilty of a felony, and if such offense was committed by the defendant in the view or presence of Morris, then Morris had a right to arrest the defendant, and, to do so, had the right to use such force as was necessary under the circumstances to effect his arrest, but no more; and that, if deceased was seeking to effect the arrest of defendant under such circumstances, and was using no more force than was necessary to effect the arrest of the defendant, the defendant in such case, if he shot and killed the deceased, could not be justified on the ground of self-defense, but would be guilty of murder or manslaughter, according as the evidence shows," etc. We have examined the record carefully, and there is no testimony to show that the assault by defendant on McLeod and Pasley was made in the view of the deceased, or in his presence (and we understand, in this connection, that "view" means within sight), and, to our minds, the record is also silent as to any attempted arrest on the part of the deceased. The record, indeed, shows that the deceased had been informed of the difficulty, and had been requested to· stop the defendant from further interfering or attempting to kill Will McLeod and Ella Mitchell. The only language or action of the said deceased that could possibly be construed into an attempted arrest has already been given, to-wit: that he first called on the doctor to stop a moment, and then called to defendant to wait. This language and conduct of the deceased comports more with the idea that he merely called to defendant to stop, in a peaceful manner, to talk with him about the affair, and to request that he desist from further interference with said parties, than an attempt on his part to make an arrest of said defendant. In our opinion, the charge.in questson was not called for by any evidence in this case, for the evidence neither shows that the previous difficulty occurred within the view and presence of deceased, nor that he attempted to arrest the defendant on said account. The inquiry, however, here is, was said charge calculated to injure the rights of the appellant, or did it have that effect? As previously stated, the evidence does not disclose an attempted arrest on the part of the deceased. It does, however, show that, when defendant was accosted, and asked simply, in a peaceful manner, to stop a moment, he turned upon the deceased, made the first hostile demonstration, drew, or attempted to draw, his pistol, and, though asked by deceased to desist, and not do that, he continued to draw his weapon, and compelled deceased to stand on his own defense. The court's charge on self-defense was a proper charge, and covered this phase of the case, putting it to the jury: "If the deceased was the aggressor, and himself made the first hostile demonstration, and attempted to shoot the defendant, that the defendant then had a right to act in his own self-defense." But, concede that the acts of the deceased, and his language on the occasion, was an attempt on his part to arrest the defendant. Up to this point,

he had used no force, and had made no hostile demonstration, his language was quiet and peaceful, and framed merely as a request,—when the defendant, taking the initiative, himself became the aggressor, and attempted to draw his pistol, for the purpose, unquestionably, of assaulting the deceased. He had declared, beforehand, "that he was not going to be arrested by any God damned white man * * * until he had killed Ella Mitchell and William McLeod." This, itself, was evidence of express malice on his part against any person who should attempt his arrest; and, as we understand the authorities, "a defendant would be guilty of murder in the first degree, if he, anticipating an arrest, should prepare himself with a deadly weapon and deliberately and calmly form the intent to kill the officer." See Miers v. State, 34 Tex. Crim. Rep., 161; English v. State, 34 Tex. Crim. Rep., 190; Miller v. State, 32 Tex. Crim. Rep., 321; Miller v. State, 31 Tex. Crim. Rep., 609.

Moreover, take another view of this case. While the court charged the jury, under Art. 226, Code Crim. Proc., if the deceased, as a private person, attempted to arrest the defendant, that he had a right to do so, if the jury should find that the original difficulty in which the defendant attempted to kill McLeod occurred in his view or presence. This charge conveyed to the jury, also, the idea, if said original assault did not occur in the view or presence of the said deceased, then he would have no right to make said arrest, and as there was absolutely no evidence in the record showing that the said assault occurred within the view or in the presence of the said deceased, then such charge could not have operated to the prejudice of the defendant, because it was tantamount to stating to the jury that, in the absence of such testimony showing that the deceased saw said previous difficulty, then he had no right to have attempted the arrest of the said defendant, and such attempt was an assault on his part. The record in this case shows, beyond question,—indeed, the proof is all one way,—that the defendant, in the absence of any known provocation, had deliberately formed his intent to kill Bill McLeod and Ella Mitchell, went and armed himself for that purpose, sought them, and, when he found McLeod, made a deadly assault upon him; that, after his pistol was rendered useless, he went and reloaded it, and then continued the search for Ella Mitchell, and, when notified that he would be arrested, declared that he would not submit to an arrest. Concede that the acts and language of the deceased was an attempt to arrest him, yet, before any hostile act or demonstration on the part of the said deceased, appellant attempted to slay him. This indicates clearly that he did not intend to be arrested by any one, but intended to resist such arrest, and to kill any one attempting it, until he had succeeded in his purpose of killing Ella Mitchell and Bill McLeod. The killing of the deceased, under these circumstances, is, *to our* minds, a killing upon express malice; and in the face of the record in this case, though there was no evidence to support the charge given on the subject of arrest, yet it was not calculated to mislead or confuse the

jury, or to impair or injure the rights of the defendant. As stated before, there was no exception to the charge in question, and, as said in McMillan v. State, ante p. 370: "In such case, we look to the charge as given, and the facts of the case, to determine whether an abstract erroneous charge was calculated to injure the rights of the appellant;" and the charge in this case not being such as could have injured the rights of the appellant, as we believe, the evidence establishes beyond any reasonable doubt a murder upon express malice, and nothing else. The judgment of the lower court is affirmed.

*Affirmed.*