## JOHN DOSS v. THE STATE.

### No. 2468.    Decided March 19, 1902.

**1.—Murder—Insulting Conduct to Wife—Self-Defense.**

On a trial for murder, where it appeared that the only inducement shown for the commission of the act of killing was the insulting conduct of deceased, who appellant's wife had told him had ravished her; that appellant saw deceased pass and followed him with pistol in hand, when, having overtaken him, and deceased, upon seeing him, reached for his winchester which he had in his buggy, whereupon defendant emptied his pistol at him; and then taking his winchester from him struck him a blow or two over the head with it; Held, there was no self-defense in the case.

**2.—Murder in Second Degree—Evidence Insufficient.**

See opinion for case stated, which the court holds showed, if any, no higher degree of offense than manslaughter; and that a conviction of murder in the second degree was not supported by the evidence.

Appeal from the District Court of Hill.    Tried below before Hon. W. Poindexter.

Appeal from a conviction for murder in the second degree; penalty, twelve years imprisonment in the penitentiary.

The appellant was charged by indictment with the murder of one James Barrow, on the 8th day of August, 1896, by shooting him with a pistol.

The important facts are sufficiently stated in the opinion.

*W. C. Wear* and *Spell & Phillips,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twelve years.

A brief synopsis of the evidence shows that appellant and deceased were neighbors, as well as one Frier. The wife of Frier was in bad health, which determined Frier to take a trip to Mineral Wells. Frier and his wife invited the wife of appellant to accompany them. After discussing it among themselves, appellant and his wife agreed that she should make the trip. Deceased joined the party at Mineral Wells, and remained with them at that point. Upon leaving that point, with-

out going into a detailed statement in regard to these matters, and upon arriving at home, the wife informed her husband (appellant) that deceased had twice ravished her, enforcing his threats against her with a Winchester. This information was given appellant on Monday night. She also informed him that Frier had perpetrated the same outrage upon her. On the Saturday following her return deceased passed the house of appellant. Appellant was in the lot, some 150 yards away. Appellant saw the man passing but was uncertain as to who it was, but believed it to be deceased. He immediately bridled his horse, armed himself with a pistol, and followed deceased with the admitted purpose of killing him, and pursued him until he overtook him some mile away. Just before overtaking deceased he met two persons on the side of the road, and inquired who was the occupant of the buggy. He was informed that it was deceased. This seems to have been the first accurate information as to the fact that it was deceased he was following. In the pursuit he held his pistol in his hand the entire way. He testified that when within a few steps—at least a short distance—from the buggy, deceased looked up and saw him and reached for his Winchester, and that he immediately shot, and continued shooting; that when his pistol was emptied deceased undertook to get out of the buggy with his Winchester in his hand, and, thinking he had not killed him, and that his life was in danger, he took the gun away from him, and struck him a time or two over the head with it. The facts show that the gun had been used as a bludgeon, and the barrel was slightly bent. It is unquestioned by the testimony in the record that until this occurrence and the return of appellant's wife his relation with deceased was of the most friendly character. This is the only circumstance or thing that occurred to mar that friendship. The testimony is further unquestioned that this had a very disturbing influence upon the mind of appellant. Under this state of facts the court refused to submit the issue of self-defense. We think this was correct. Shannon v. State, 35 Texas Crim. Rep., 2; Hill v. State, 35 Texas Crim. Rep., 371; Wolfforth v. State, 31 Texas Crim. Rep., 387; Foreman v. State, 33 Texas Crim. Rep., 273; Cartwright v. State, 14 Texas Crim. App., 486. As before stated, the only inducement shown by the testimony was the insulting conduct to the wife of appellant as she detailed it to him. The intent and purpose of appellant in following deceased was to kill him. There was no condition coupled with his purpose as manifested in this record. Every act of the defendant was to the same effect. He had his pistol in his hand ready; he approached deceased in a rapid manner, and for the express purpose of killing him. It was not for the purpose of inquiring of him about the matter, but alone for the purpose of killing. His actions, as well as his intent, were coupled together, and showed the evident intent and purpose of destroying the life of deceased on account of the insulting conduct towards his wife. He provoked the difficulty, produced the occasion. His intent and purpose, viewed from his own standpoint, was to kill,

and he had no other purpose, so far as this record is concerned. This eliminates the question of self-defense.

It occurs to us this brings up a very serious question,—as to the sufficiency of the evidence to support the conviction for murder in the second degree. As before stated, the only object and purpose of the defendant was to kill, and for the reason, as he believed, that his wife had been outraged and ravished by deceased; and, whether this was true or false, if he believed it to be true, it was true to him. These matters must be viewed from the standpoint of defendant, and the circumstances and environments which surround him, and his action under these circumstances and environments. The jury would not be authorized to arbitrarily reject the uncontradicted testimony. If there were other motives that might have actuated him, a different question would be presented; but there were none. We therefore do not believe that the judgment for an offense of greater magnitude than manslaughter could be inflicted under the peculiar testimony before us in this record. The cause and passion are shown, and not contradicted. The judgment is reversed and the cause remanded.

*Reversed and remanded.*