## J. A. CLAXTON V. THE STATE.

No. 9382.   Delivered March 17, 1926.

Rehearing granted State May 19, 1926.·

Rehearing granted Appellant November 10, 1926.

### 1.—Murder—Evidence—Held Insufficient.

The evidence in this case discloses that immediately upon learning of insulting conduct and abuse of his daughter, a Mrs. Gunn, directed by the deceased and one McAlpine, the appellant armed himself, went to the home of Junek and shot and killed Junek and McAlpine, and accidentally wounded McAlpine's wife.   There is nothing in the record that establishes that the killing was due to any other cause than the sudden passion aroused by the insults offered his daughter by Junek and McAlpine.   The absence of all evidence of premeditation indicates that appellant was not in a condition where his mind was capable of cool reflection, and the conviction of murder, with life imprisonment, should be reversed.

#### ON REHEARING BY STATE.

### 2.—Same—Evidence Held Sufficient.

On rehearing by the state, upon further analysis of the evidence presented, we are convinced that our original opinion, reversing the judgment herein, was in error, and the state's motion for rehearing will be granted, and the reversal set aside, and the judgment affirmed.   See opinion on rehearing for an exhaustive analysis of the evidence.

#### ON REHEARING BY APPELLANT.

### 3.—Same—Continued.

In considering the state's motion for rehearing, the court considered alone the sufficiency of the evidence.   On rehearing by appellant many legal propositions are presented, which were not passed upon in the original opinion, nor the opinion on rehearing by the state.

### 4.—Same—Charge of Court—On Manslaughter—Erroneous.

It is undisputed that appellant killed, at the same time and place, the deceased Junek and one McAlpine, both of whom appellant had been informed insulted and abused appellant's daughter, a short time before the killing.   He was on trial for killing Junek and defended upon the theory of sudden passion, etc., aroused by the supposed insult of both Junek and McAlpine.

### 5.—Same—Continued.

In submitting the law of manslaughter the court charged the jury, "The act must be directly caused by the passion arising out of the provocation.   It is not enough that the mind is merely agitated by passion arising from some other provocation, *or a provocation given by some other person than the party killed.*

### 6.—Same—Continued.

This charge was calculated to eliminate from the consideration of the jury the alleged conduct of McAlpine upon the mind of the appellant,

and the court on exception should have amended the charge. His state of mind, resulti~~ from the facts shown by the entire evidence, was a question of fact that should have been affirmatively submitted for the solution of the jury, and the affirmance heretofore ordered is set aside, and the judgment is reversed. See Byrd v. State, 39 Tex. Crim. Rep. 609, and other cases cited in opinion on rehearing.

Appeal from the District Court of Milam County. Tried below before the Hon. John Watson, Judge.

Appeal from a conviction for murder, penalty life imprisonment in the penitentiary.

This is a companion case to Claxton v. State, No. 9512, opinion handed down during this term. The facts are very much the same as in the companion case.

*Henderson, Kidd & Henderson* of Cameron for appellant. On court's charge, limiting provocation to acts of deceased alone, appellant cites:

House v. State, 171 S. W. 206.
Garcia v. State, 156 S. W. 939.
Rogers v. State, 212 S. W. 166.
Brookerson v. State, 242 S. W. 234.
Colton v. State, 217 S. W. 158.

*A. J. Lewis,* County Attorney, Milam County; *Chambers, Wallace & Gillis* of Cameron; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Milam County of murder; punishment fixed at confinement in the penitentiary for life.

This is a companion case to Claxton v. State, No. 9512, opinion handed down during this term. The facts are very much the same as in the companion case, and we see no reason for entertaining divergent views as to the law of the case.

It is shown without dispute that on the morning of the homicide appellant shot and killed two men, one a neighbor of long standing and the other of comparative recent acquaintance, with neither of whom he had had any words or quarrel or against whom he entertained any grudge. He had a married daughter, Mrs. Gunn, who was in a delicate condition, expecting confinement. In addition to the anxiety ordinarily attendant upon such condition, said daughter was very large and fleshy and the family were concerned about her. It is shown without contradiction

that an unmarried daughter of appellant came to the house and told him that she had just been down to her married sister's and learned that the two men who were slain, had been there and cursed and abused Mrs. Gunn and called her vile names. It is further shown that without going back to the mule and plow which he had left standing in the field, appellant took his gun and went down the road toward Mrs. Gunn's, said road leading past the place where said two men lived. McAlpine and Junek, the two men who were killed, were sitting on the porch at McAlpine's house as appellant approached. When he turned in the gate they fled and he began shooting. He shot through the door of the house, wounding Mrs. McAlpine, and also appears to have shot other times through the walls, according to the testimony of parties who inspected the premises later. He then pushed the door open, went inside, shot and killed McAlpine and pursued Junek out into the garden where he shot him through the head and body time after time with a Winchester rifle. There is not a suggestion worthy of consideration in this record that the killing resulted from other than the passion aroused by the communication of the insulting words and conduct to his daughter, or that the circumstances surrounding the homicide showed other than that it was the first meeting, and that appellant's mind was actuated alone by uncontrollable rage and anger. This is recognized by statute as adequate cause to produce in the mind of a person of ordinary temper such degree of anger, rage, resentment, etc., as to warrant the reduction of the offense to manslaughter. While it is not indispensable to a conviction for homicide that a motive be shown, and it is apparent that the killing may be attended with such circumstances as to show malice, deliberation, etc., still where. the overwhelming testimony shows the existence of a state of facts which ordinarily would support only a conviction for manslaughter, and nothing in the record points to coolness, deliberative or formed design, and there appears a conviction for murder with a penalty as grave as that inflicted in the instant case, this court is unwilling to lend its sanction to such a verdict.

The fact that one of the men killed was almost a stranger to appellant; that the killing took place within so short a time after the communication to him of the fact of the insulting conduct; the manner and method of the killing of both men, the lack of evidence of coolness and formed design, the absence of all evidence of premeditation,—seems to so strongly indicate that

appellant was not in a condition where his mind was capable of cool reflection as to make us feel that the case ought to be reversed and remanded for another trial, and it is so ordered.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the motion for rehearing State's counsel insists that there were matters of evidence combatting the idea that at the time the fatal shots were fired into the body of the deceased, appellant's mind was, by adequate cause, rendered incapable of cool reflection. As we understand the record, there were certain facts established by uncontroverted evidence. Among them are the following: Otto Junek, J. N. McAlpine, J. A. Claxton and Jess Gunn were neighbors. They were farmers and men of family. The distance between the home of Gunn and that of the appellant was between 500 and 600 yards, and McAlpine's home was between them. Mrs. Gunn was the daughter of the appellant. Junek and the appellant had resided in the community for sometime. McAlpine was a newcomer. All the parties named lived upon rented farms. Gunn resided in a house upon the farm under the control of Junek and was employed by him as a farm hand. On the day before the homicide, Junek had informed Gunn that he would have to surrender the house occupied by him in order that McAlpine might occupy it. He also informed Gunn that the water in the cistern at the house occupied by Gunn was not to be used for washing clothes. On that evening Gunn left his home in search of another and his wife, Carrie Gunn, spent the night with the appellant, her father. On the following morning, she returned to her home and was preparing to wash her clothes, using water from the cistern. Martin Junek, a youth, son of the deceased, at the request of his father, came to the Gunn home and notified Mrs. Gunn that Junek objected to the use of the water for washing clothes. The chain was removed from the cistern. According to the boy's testimony, Mrs. Gunn declined to desist from the use of the water and improvised means of drawing it with a rope and bucket. This situation was apparently reported by Martin Junek to his father, who then went to the home of McAlpine and the two, in company with Martin Junek, went to the Gunn home, where occurred a conversation with Mrs. Gunn, the nature and duration of which are sharply controverted. From the Gunn home, Junek and McAlpine went to the home of the latter where, within a short time, the homicide took place.

The evidence touching the incidents of the homicide is set out in some detail in the companion case of Claxton v. State, reported in 280 S. W. 832, to which we refer for the details, as they are in substance in accord with the evidence in the present record.

According to Mrs. Gunn, both Junek and McAlpine, during their interview with her, in their language and conduct, were abusive, threatening and insulting. As a result thereof, she was so shocked as to make her sick. Shortly after the departure of Junek and McAlpine, appellant's daughter Vera appeared near the Gunn home for the purpose of getting mail. She was called by Mrs. Gunn and her version of the interview with the deceased and McAlpine was reported by Mrs. Gunn, and according to appellant's testimony and that of Vera, she in turn reported the matter in detail to the appellant and told him that Mrs. Gunn's physical condition was such as to demand his attention. Mrs. Gunn, at the time, was supposed to be pregnant. From the evidence we gather that in this she was mistaken. According to the testimony of the appellant, he believed her to be in that condition and started to her house to relieve her, taking his gun with him. In passing the McAlpine home he observed Junek and McAlpine, and the tragedy took place. After the homicide appellant went to the Gunn home and assisted his daughter to his own home.

State's counsel adverts to the conduct of the appellant after the homicide as one of the circumstances upon which reliance is had to support its theory above mentioned. It appears that during the time intervening between the homicide and the appearance of the officers, the noon meal was prepared and when the officers arrived the Claxton family was about to eat dinner. On the subject we take from the officer's testimony the following:

"He was fixing to eat dinner and asked me to let's eat dinner before we came to town, but I did not go in the house. I do not know whether dinner was then ready or whether he was eating —I was just going by what he said."

Another circumstance to which the state adverts is that a dog at the home of Gunn was tied and that appellant before taking his daughter to his home, released the dog so that it might not be abandoned.

As stated above, the details of the homicide are revealed in the report of the companion case. In the tragedy Mrs. McAlpine was wounded and McAlpine and Junek were killed. During the encounter Mrs. McAlpine attempted to shut the door, which would have prevented the appellant's entrance, when he fired

through the door and the shot struck her. Junek, in the meantime, had fled. McAlpine had also fled and was hiding the children in the yard. Appellant inquired of McAlpine where Junek was, to which McAlpine replied that he did not know. Appellant then said: "I will find him and will kill you, too," using an oath. He then shot McAlpine and pursued Junek into the garden where he shot him a number of times. According to the state's theory, Junek was shot through the head twice after falling on the ground.

The incidents of the tragedy covered some little time. The evidence in the report of the decision in the companion case reveals the various movements of the parties to the tragedy. The right of the court to order a reversal of the judgment because of the insufficiency of the facts in a given case is not open to question, but is expressly conferred by statute in these words:

"The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts; but, when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall in all cases be remanded for new trial." (Art. 939, C. C. P., Vernon's Tex. Crim. Stat., Vol. 2, p. 906.)

In the exercise of such authority it is necessary to keep in mind other statutory provisions such as Art. 734 Vernon's Tex. Crim. Stat., Vol. 2, wherein it is said that "the jury are the exclusive judges of the facts in every criminal case" and Art. 786, C. C. P., in which it is said:

"The jury, in all cases, are the exclusive judges of the facts proved and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence."

The language of Art. 1135, P. C., Vernon's Tex. Crim. Stat., Vol. 1, p. 686, reads thus:

"The jury shall be at liberty to determine in every case whether, under all the circumstances, the insulting words or gestures were the real cause which provoked the killing."

The statutory provision according to the accused the presumption of innocence is likewise a necessary element. In all cases of homicide in which the defense of manslaughter based upon insults to a female relative is interposed, this court has recognized by reason of the statutes mentioned as well as the nature

of the transaction, that the state of mind in which the act is committed was for the jury to determine. Branch's Ann. Tex. P. C., Sec. 2029, citing Williams v. State, 24 Texas Crim. App. 666, and other cases. See also Pitts v. State, 29 Texas Crim. App. 374; Gillespie v. State, 53 Tex. Crim. Rep. 168; Jones v. State, 47 Tex. Crim. Rep. 515; Jones v. State, 33 Tex. Crim. Rep. 492; Squyres v. State, 242 S. W. 1024. Upon the subject, in the case of Bowlin v. State, 93 Tex. Crim. Rep. 452, the following language was used:

' "The records of this court furnish some instances in which the evidence of adequate cause, the requisite passion and the slaying upon the first meeting, was conclusive to a degree which excluded every other theory and rendered it incumbent upon this court to refuse to sanction the verdict of murder. See Doss v. State, 43 Tex. Crim. Rep. 551; Stewart v. State, 52 Tex. Crim. Rep. 284. These are exceptional cases, contrary to the general rule, which commits to the jury the decision of the state of mind in which the fatal shots were fired or the fatal blows were struck. The testimony of one accused of crime to a state of facts exculpating him or mitigating the offense is not conclusive against the State, especially where there are circumstances tending to contradict its truth. Under the statute, the jury is called upon to determine whether the alleged insulting conduct was the real cause of the killing. Penal Code, Art. 1135."

The Stewart case, 52 Tex. Crim. Rep. 284, was reversed because of faults in the charge, the court stating, however, that the evidence was deemed insufficient. The Doss case, 43 Tex. Crim. Rep. 551, was reversed for the reason that the court deemed the evidence that the accused's mind was rendered incapable of cool reflection conclusive. So far as the writer is aware, the Doss case, supra, is the single instance in which that ruling has been made. There has never been, so far as the writer is aware, any express announcement overruling the Doss case as a precedent. The case of Davis v. State, 70 Tex. Crim. Rep. 37, written by the same judge who wrote the opinion in the Doss case, is difficult to harmonize with the latter. The Davis case was upon facts too complicated to recite but not materially different in their legal effect from the facts in the present record. The conclusion stated by Judge Davidson is in these words:

"In this case there seems to be no question from the facts that the insult to the wife occurred, and that it was the cause and only cause which led to the killing. None other is shown or sought to be shown except such insulting language used by

deceased to appellant's wife. If his mind was agitated and aroused it would be manslaughter; if not so aroused, murder in the second degree would be an issue. Under the authorities above cited we are of opinion that the court did not err in submitting murder in the second degree."

This court has often recognized the obvious fact that the alleged insulting words or conduct of the deceased may not render the mind of the assailant incapable of cool reflection, but may be proof of malice. Breedlove v. State, 26 Tex. Crim. App. 451; Ex Parte Jones, 31 Tex. Crim. Rep. 422; Massie v. State, 30 Tex. Crim. App. 64; Redman v. State, 149 S. W. 670, and other cases collated by Mr. Branch in his Tex. P. C., Sec. 2028.

The insulting words or conduct of the deceased, if believed by the accused, are real to him though in fact they be untrue. Jones v. State, 33 Tex. Crim. Rep. 492, and other cases collated in Branch's Ann. Tex. P. C., Sec. 2031.

It is competent, however, to introduce evidence leading to the conclusion that the evidence of the alleged insult was a fabrication or that the appellant's version of it was exaggerated. Jones v. State, 38 Tex. Crim. Rep. 105; Proctor v. State, 54 Tex. Crim. Rep. 259; Long v. State, 59 Tex. Crim. Rep. 103; Cameron v. State, 153 S. W. 867, and other cases collated in Branch's Ann. Tex. P. C., Sec. 2032.

In the present case, the testimony of Mrs. Gunn and that of the state's witnesses are in sharp conflict. According to her testimony, the deceased Junek and McAlpine remained upon her premises for about an hour and a half, calling her vile names and making threats against her; that this was done repeatedly and continuously by each. Junek's boy, who was present, denied that any insulting language or conduct took place. He testified directly and Mrs. McAlpine circumstantially that the interview lasted not more than five minutes. The jury were called upon to determine which version was true — that of Mrs. Gunn or that of the state's witnesses. The testimony is incapable of reconciliation. If the jury believed the testimony of the state's witness Martin Junek, they could not have believed that the deceased and his companion McAlpine were guilty of any insulting words or conduct. The purpose of receiving the testimony controverting the fact that the insulting language was given is for its bearing upon the probability that a report to the accused of the insulting conduct was made. In other words, if Mrs. Gunn was not insulted, if the conduct imputed by her on the trial to the deceased did not occur, then it would be improbable that she

reported it to her sister Vera and likewise improbable that Vera communicated it to the appellant.

In deciding the issues submitted to them, the jury in the present record were authorized to consider the conduct of the appellant before and after the homicide, as well as that taking place on the exact occasion of the killing. We confess our inability to find in the record any cogent evidence leading to the conclusion that there was a previous difficulty or even ill-will in the mind of the appellant against the deceased, unless it be that the appellant was incensed at both Junek and McAlpine because of the fact that Gunn and his wife were called upon by Junek to vacate the premises which they occupied in favor of McAlpine, and forbidding the use of the water during their occupancy of the place. It is true that there was no direct evidence showing that the appellant knew of this demand, but it was made on the day before the homicide. His son-in-law Gunn had gone off to seek another home and his wife (daughter of the appellant) spent the night at the appellant's home. The appellant's conduct above adverted to immediately after the homicide, as developed by the evidence, may have been regarded by the jury as indicative of calmness incompatible with the theory that he was incapable of cool reflection at the time of the tragedy.

The circumstances are rare indeed in which the inference of loss of mental control is, as a matter of law, inferred from the enormity of the offense committed. See Apolinar v. State, 92 Tex. Crim. Rep. 583.

Again, the law takes note of the fact that the testimony given from the interested witnesses is not necessarily binding upon the jury, especially when it applies to controverted facts. See Hawkins v. State, 270 S. W. 1025. Discussing the subject in Stovall's case, 98 Tex. Crim. Rep. 297, this language was used:

"It is to be noted that the issue of insulting conduct comes alone from the testimony of the appellant. In deciding whether the communications had been made to him by his wife, all the facts bearing upon that issue were available to the jury, including the interest of the appellant, who testified as a witness in his own behalf. There was no imperative obligation upon the jury to believe that his story was true. Its effect upon his mind was likewise a question of fact, and upon this issue, the reputation of his wife and his previous conduct toward her were elements which the court would not have been justified in ignoring."

In the present case, just what occurred and what the appellant learned, as stated above, comes from his testimony and that of

members of his family.  That he learned that Junek, after notifying Gunn that he must vacate and surrender the house to McAlpine, had forbid Mrs. Gunn the use of the cistern water for washing purposes seems evident.  That the exasperating details claimed by Mrs. Gunn and Vera Claxton were related can be believed only by disregarding the testimony showing the circumstances mentioned above and the direct testimony of the boy, Martin Junek.  It was within the province of the jury to weigh this testimony.

In the companion case, on practically identical evidence, a verdict of murder was rendered.  The reversal was based mainly upon an error in the charge.  In the opinion it was said, however, that "we were not to be understood as saying that the evidence was not strong enough to support the conviction of murder, but that the court was desirous that the evidence should be passed upon by another jury."  In the present record is the verdict of the second jury of the same nature.  Upon reflection, it is believed that in overturning the judgment of the jury and that of the trial court on the fact of mental agitation, this court, on the present record, has gone too far, and should be impelled by duty to grant the state's motion for rehearing, to set aside the judgment reversing the conviction and to order its affirmance.  It is so ordered.

*Affirmed.*

LATTIMORE, JUDGE.—My views are as expressed in the original opinion, but I do not care to enter any dissent when same relates to a matter dependent upon the facts.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In considering the state's motion for rehearing, we considered alone the sufficiency of the evidence.  On the present motion for rehearing the affirmance is attacked from many angles.  We have considered all but will discuss only one of them.

In the paragraph of the court's charge on the law of manslaughter, we find the following language:

"The act must be directly caused by the passion arising out of the provocation.  It is not enough that the mind is merely agitated by passion arising from some other provocation, *or a provocation given by some other person than the party killed.*"

Timely and specific objection in writing was taken to this paragraph, in response to which the court declined to amend his charge.  The sole defensive theory arising from the evidence

was that the fatal shots were fired by the appellant while his mind was rendered incapable of cool reflection by information of insulting words and conduct towards his daughter by McAlpine and Junek.   All the evidence upon the subject of insulting conduct leads to the knowledge that in the interview with the appellant's daughter both Junek and McAlpine were present and acting together.    According to his daughter, Vera, and the appellant, the report was made to him that the conduct of both McAlpine and Junek had been grossly insulting to the appellant's daughter, Mrs. Gunn.   The appellant was on trial for the murder of Junek.   His state of mind resulting from the entire evidence was a question of fact for the solution of the jury. The paragraph of the charge mentioned was calculated to eliminate from the consideration of the jury the alleged conduct of McAlpine upon the mind of the appellant, and the court, on exception, should have amended the charge.   Among the cases establishing this principle may be mentioned Byrd v. State, 39 Tex. Crim. Rep. 609; Stacy v. State, 48 Tex. Crim. Rep. 95; Garcia v. State, 70 Tex. Crim. Rep. 488; House v. State, 75 Tex. Crim. Rep. 345; Rodgers v. State, 212 S. W. 166.    See also Brookreson v. State, 242 S. W. 234; Cotton v. State, 217 S. W. 159.

Considering the nature of the case and the evidence developed, the necessity of a charge on manslaughter, the only defensive theory, is obvious, and we are not prepared to declare that the fault in the charge was not in its consequences prejudicial to the appellant's case.

For these reasons the appellant's motion for rehearing is granted, the affirmance heretofore ordered is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*