## HOMER BECKHAM V. THE STATE.

No. 15866. Delivered June 7, 1933.
Rehearing Denied October 25, 1933.
Reported in 63 S. W. (2d) 706.

The opinion states the case.

*Early & Johnson,* of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Knox Edmondson by cutting him with a knife.

Appellant earnestly insists that the evidence is insufficient to warrant a conviction for murder upon malice aforethought. The contention is that the proof on the part of the state shows

that appellant acted under the immediate influence of a sudden passion arising from an adequate cause at the time he struck the fatal blow. Looking to the testimony of the state, it is observed that appellant and deceased had a controversy about some whisky. It appears that appellant had gotten some whisky from deceased's nephew. The matter was reported to deceased with the statement by the nephew that appellant had taken his whisky and refused to pay him for it. Deceased sought appellant for the purpose of asking about the matter. When the parties met deceased took appellant to task for his conduct, advising him, in effect, that he thought it was a "dirty trick" to take the whisky and not pay for it. Appellant replied: "What the hell are you going to do about it?" A fight ensued, in which appellant's clothes were torn and his face and head bruised and cut. One of the witnesses for the state testified that appellant and deceased hit each other about the same time. Another state's witness testified that appellant struck the first blow. In any event, during the difficulty, the parties clinched and fought until they were separated. Appellant declared during the fight that he had been cut with a knife. While they were fighting deceased said: "You s— of a b—, you are trying to cut me with a knife." After the fight appellant said: "He has beat me all to hell." Further, he said: "I think he has cut me." Stooping down appellant picked up a knife. The state's testimony was to the effect that, notwithstanding the knife belonged to appellant, he tried to leave the impression at the time he picked it up that it belonged to deceased. After the fight appellant walked away from the scene of the trouble. Holding a knife in his hand, he said: "I am going to kill the s— of a b— if I can find him." Appellant then sought deceased. About ten minutes after the first difficulty appellant came upon deceased while he (deceased) was talking to two other men. Deceased was making no demonstration toward appellant at the time. After reaching deceased, appellant stabbed him in the breast with a knife. A witness testified: "I have an idea it was a knife with about a four inch blade." Deceased fell to the ground, saying: "He has killed me." Deceased lived only a short time. It appears that appellant and deceased had not known each other prior to the homicide. The state's testimony was to the effect that appellant appeared to be angry after the first difficulty with deceased.

The testimony of appellant and his witnesses was to the effect that deceased provoked the first difficulty. Appellant testified that deceased struck him with brass knucks or some hard

instrument; and that he believed deceased cut him with a knife during the first difficulty. The testimony of the physician attending appellant was to the effect that he had cuts and contusions on his head. Appellant denied that he sought deceased after the first difficulty. He said he was preparing to leave the scene of the trouble when deceased attacked him again. He declared that deceased was hitting at him with a knife and cut him on the hand, and that he finally succeeded in getting his knife out. He testified that he was excited and believed that his life was in danger. He said he cut at deceased in an effort to disengage himself. He declared that he had no intention of killing deceased.

Prior to the repeal of the statute defining manslaughter article 1248, P. C., provided: "The following are deemed adequate causes: 1. An assault and battery by the deceased causing pain or bloodshed. 2. A serious personal conflict, in which great injury is inflicted by the person killed, by means of weapons or other instruments of violence, or by means of great superiority of personal strength, although the person killing was the aggressor, provided such aggression was not made with intent to bring on a conflict and for the purpose of killing." Other subdivisions of the article are not set forth for the reason that they are not pertinent to the matter under discussion. When the present murder statute was enacted article 1248, supra, was repealed. Under the Acts of 1931, 42nd Legislature, page 94, chapter 60, murder without malice is defined to be a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Other than as set forth in the Act mentioned, the term "adequate cause" is not defined in the statutes relating to homicide. We have held that under the law as it now exists the court is not required to define the term "adequate cause" other than as same is defined in said chapter 60. F. M. Birchfield v. The State, Opinion No. 15,842, delivered May 3, 1933.

Prior to the repeal of the statutes defining manslaughter this court, in Claxton v. State, 288 S. W., 444, in the Opinion on State's Motion for Rehearing, said: "In all cases of homicide in which the defense of manslaughter, based upon insults to a female relative, is interposed, this court has recognized, by reason of the statutes mentioned, as well as the nature of the trans-

action, that the state of mind in which the act is committed was for the jury to determine.". Again, the court said: "This court has often recognized the obvious fact that the alleged insulting words or conduct of the deceased may not render the mind of the assailant incapable of cool reflection, but may be proof of malice."

Since the enactment of our present statute defining murder, this court, in Anderson v. State, 9 S. W. (2d) 267, said: "Under the recently enacted homicide statute, the penalty to be inflicted is conditioned upon the state of mind of the accused at the time of the killing. This is always a jury question." In Toms v. State, 31 S. W. (2d) 630, the contention was made that the evidence was inadequate to show malice aforethought. In overruling the contention, we said: "The influences that bear upon the mind of the accused in a criminal case and the effect thereof are peculiarly matters within the province of the jury."

Considering the testimony in the light of the decisions mentioned, we would not feel warranted in ordering a reversal.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we should have reached the conclusion in our original opinion that he was not guilty of more than murder without malice, and should have ordered a reversal. The contention has made it necessary to again review the entire statement of facts. After having done so we adhere to the view heretofore expressed. It will avail nothing to set out the evidence in more detail than has already been done. Upon an issue involving the state of mind in which an accused commits an offense this court will not disturb the finding of a jury where from the whole case there appears evidence supporting the verdict. As supporting his position appellant cites among other cases those of Stewart v. State, 52 Texas Crim. Rep., 284, 106 S. W., 685; Doss v. State, 43 Texas Crim. Rep., 551, 67 S. W., 321; Davis v. State, 70 Texas Crim. Rep., 37, 155 S. W., 546. All of the named cases were reviewed in Claxton v. State, 105 Texas Crim. Rep., 308, 288 S. W., 444, in which the right of this court to reverse upon the facts under article 848 (formerly article 939) C. C. P., was recognized but it was further noted that the state

of mind in which a homicide was committed was for the jury to determine.

Believing the finding of the jury in the present case finds support in the evidence, the motion for rehearing is overruled.

*Overruled.*