### FRANK RALSTON v. THE STATE.

No. 18978.   Delivered May 26, 1937.
Rehearing Denied June 23, 1937.
Application for Leave to File Second Motion for Rehearing
Denied October 13, 1937.

The opinion states the case.

*W. S. Moore,* of Gainesville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, seven years in the penitentiary.

We see no need for extended discussion of the facts in this case. There is no dispute of the fact that appellant cut the deceased a number of times with a knife from the effects of which death resulted quickly. It was shown that following a slight disturbance at a dance hall, resulting from appellant having slapped a girl, appellant and deceased had an alterca-

tion.  Appellant got hold of a piece of pipe, and deceased seems to have hurriedly left the place.  Appellant pursued him.  When next seen the two men were on the ground, appellant on top of deceased making striking motions with his hand.  A witness who was near by said that as she came around appellant he was raising his right hand and she saw he had a knife in his hand.  The length of the knife blade was about four inches.  She testified she saw appellant strike deceased two or three times with the knife.  After they got up she heard appellant say "You damn son-of-a-bitch, I will kill you."  Another witness testified that after appellant arose from the body of deceased he said "I stabbed him twice and killed the son-of-a-bitch."  Three serious wounds were observed in the body of deceased, any one of which an undertaker of experience testified would have produced death.  Appellant and his witnesses told a somewhat different story.  Reconciliation of conflicts in testimony is for the jury, and we are not inclined to the view that they were not justified in their conclusion of guilt and in the amount of punishment inflicted.

The record is here with a number of bills of exceptions, most of which are not in a condition to be considered.  We find a bill of exceptions complaining of the testimony of the undertaker, above referred to, in which complaint is made of the reception of the testimony of the undertaker that deceased died as a result of the wounds he found on his body.  The objection was that the witness was not an expert, but the testimony in the case makes it so perfectly clear and undisputed that death was the result of one or all of the blows inflicted as to make the matter one of immateriality.

There is another bill of exceptions complaining because the court refused to charge the jury that they could not consider testimony to the effect that appellant, prior to the difficulty which resulted in the death of Lemons, slapped the witness Ethel Mae Skaggs.  We see no good reason why the court should have given such a charge.  The fact that appellant slapped the girl in question was part of the res gestae of the offense, and immediately preceded the first difficulty.  There is a bill of exceptions complaining of the charge of the court, but the qualification appended thereto by the trial judge certifies that no exceptions were taken to the charge.  There are four or five bills of exceptions to argument, each of which is qualified with the statement that no objection was made to the argument, and no request made that the jury do not consider same.

There is a bill of exceptions complaining that the mother

of appellant was sworn, at the request of the State, and put under the rule, and that her presence and counsel in the conduct of the case were necessary to protect the rights of the accused. The court qualifies the bill by saying that no objection was made by anybody to putting this witness under the rule; that she had been subpoenaed by the State. The bill shows no error.

There are a number of bills which we suppose were intended to be considered as bystanders' bills. No one of said bills shows that it was presented to the trial court and by him refused, and that same was returned to counsel with any explanation or any reason for the court's action. One of the parties signing said bill of exceptions as a bystander makes an affidavit, which appears in the record, and which negatives the statement attributed to him in said bill of exceptions. One of said bystanders' bills is only signed by two people. None of the bystanders' bills are in condition to be considered by this court.

We have gone carefully over the entire record and find nothing showing any error for which the judgment should be reversed, and it is accordingly affirmed.

*Affirmed.*

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Appellant earnestly insists that the evidence is insufficient to support a conviction for murder with malice.

Appellant and deceased, Henry Lemons, were at a dance. Witnesses for the State testified that appellant went into the dance hall and asked Ethel Mae Skaggs to go outside with him. After they left the dance hall appellant slapped her and she fell to the ground. Again the testimony of the State was to the effect that deceased approached and said to appellant: "If you strike her again you will have a man to fight." When this remark was made appellant picked up an iron bar and deceased ran to the back of the dance hall. In view of the fact that appellant criticises the original opinion on the ground that there was no evidence supporting the statement therein that appellant pursued deceased, we quote from the testimony of one of the witnesses for the State as follows: "Frank (appellant) then picked up an iron bar and Lemons (deceased) ran and Frank ran after him." When appellant and deceased reached a vacant lot near the dance hall they stopped and engaged in an argument. They then proceeded across a fence to a street

where they engaged in a fight. At this juncture we quote from the testimony of one of the witnesses for the State as follows:

"Frank (appellant) was on top of Henry (deceased) as we crossed the fence and stood there a minute; we wasn't very far from them. * * * I saw a knife in Frank Ralston's hand. The length of that knife blade was about four inches. It was just a long straight knife. It was a straight bladed knife. * * * I imagine the width of the blade of that knife was about an inch. I saw Frank Ralston strike Henry Lemons two or three times. At that time Henry Lemons was saying: 'Let me up, Frank; I will let you alone.' I did not see a knife in Henry Lemons' hand. When Frank Ralston was on top of Henry Lemons striking him with a knife it seems as if Henry was trying to get him up with his feet. The fight didn't last very long. Henry Lemons was on the ground laying on his back when Frank Ralston struck him two or three times with a knife. After Frank Ralston struck Henry Lemons two or three times with a knife, as I have testified to, he got up and started south. Henry Lemons got up but I didn't see him when he got up. He went north and Frank went south. After both parties were up I heard Frank Ralston saying 'I will kill you, you d—n s-of-a-b—.' Henry Lemons didn't say anything. He went north down Culberson Street and Frank Ralston went south down Culberson Street. I went up Culberson Street north to where Lemons was. I guess Lemons went up Culberson Street about forty yards and fell down there in the street. He did not say anything that I heard after he fell. When he was going down the street north he said: 'Help! Help! Somebody help me!' before he fell." Further the witness testified: "Henry Lemons did not curse Frank Ralston at any time. I did not see Henry Lemons strike Frank Ralston at any time." Another witness for the State testified that after the difficulty appellant said: "I stabbed him twice and killed the s-of-a-b-." Again, the testimony of the State warranted the conclusion that after deceased left the difficulty appellant threw some rocks at him and said "Hook up, you G-d-s-of-a-b-."

Appellant testified that he went from the dance hall with Ethel Mae Skaggs for the purpose of talking to her; that when they got outside she cursed him for having paid attention to other girls; that he requested her to refrain from abusing him; that she continued her abuse and he "kinda slapped her"; that deceased came up behind him and took him by the arm, saying "You got a fight on your hand"; that he told deceased to stay out of it, that it was none of his business; that deceased said:

"It is my business if I want to make it my business"; that as he (appellant) started walking over to the light, he observed that deceased had a knife in his hand; that he told deceased to put up his knife and they would have a fair fight; that as he walked toward the light where he expected to fight deceased he (appellant) stepped on a small piece of iron bar; that he picked the bar up and told deceased to put his knife up; that deceased approached him with a knife and he struck at deceased with the iron bar; that someone said the officers were coming and deceased turned and ran to the back of the dance hall into a little orchard. At this juncture we quote from the testimony of appellant as follows:

"I turned and run off with him and when I got to the north end of the dance hall building I stopped there a few minutes and throwed the iron bar down. Then I looked to see if the laws were coming. I decided to go on home so I went back around the back end of the dance hall building and went through a little driveway and got to this vacant lot, and went across this vacant lot over to Culberson Street. Then I went north on Culberson Street about fifteen or twenty yards from Tony Siders' tin garage down there and someone came out from behind it and I kinda checked up then and Lemons (deceased) came out from behind the garage and said: 'Stop down there Frank. This ain't settled.' I turned around and started back to the dance and Lemons finally caught up with me and started arguing with me, and I asked him, I said 'Lemons, what are you going to jump on me for; I haven't bothered you?' He said 'I will just tell you Ethel Mae Skaggs is my full cousin and I ain't going to have anybody bothering her.' Then I said 'That's too bad,' and when I said that he hit me in the chest and I kinda hit him and he kinda stumbled and fell. When he got up he had a knife in his hand. I backed up against the fence and he run into me and I grabbed him by the right arm. In the scuffle we fell and when we did Lemons' hand went down by the side of him like that (indicating) and I fell across him. He said then 'Let me up; I have hurt myself.' That is what he said and so I got up and after I started to get up he got up and got hold of me again and was trying to cut me with a knife and I took out my knife and we went back on the ground and got up again. I cut at him a few times, but I don't know whether I cut him or not."

Appellant denied that he made the statements attributed to him by witnesses for the State to the effect that he had stabbed the s-of-a-b- twice and killed him. Moreover, he denied that he

stated that he would kill deceased. Again, he declared that he at no time threw rocks at deceased and cursed him. He testified in effect that at the time he stabbed deceased he believed his life was in danger.

Appellant introduced witnesses who gave testimony corroborating his version of the transaction.

Deceased's knife was in his pocket at the time he was taken to the funeral home. It had no blood on it, according to the testimony of a witness for the State.

In the case of Beckham v. State, 63 S. W. (2d) 706, in which a similar situation was shown, we held that the evidence was sufficient to support a conviction for murder with malice. Since the enactment of our present statute defining murder, this court, in Anderson v. State, 9 S. W. (2d) 267, said: "Under the recently enacted homicide statute, the penalty to be inflicted is conditioned upon the state of mind of the accused at the time of the killing. This is always a jury question." In Toms v. State, 31 S. W. (2d) 630, the contention was made that the evidence was inadequate to show malice aforethought. In overruling such contention we said: "The influences that bear upon the mind of the accused in a criminal case and the effect thereof are peculiarly matters within the province of the jury." We quote from the opinion on motion for rehearing in Beckham v. State, supra: "Upon an issue involving the state of mind in which an accused commits an offense, this court will not disturb the finding of the jury where from the whole case there appears evidence supporting the verdict." As supporting his position, appellant cites, among other cases, those of Stewart v. State, 52 Texas Crim. Rep., 284, 106 S. W., 685; Doss v. State, 43 Texas Crim. Rep., 551, 67 S. W., 321; Davis v. State, 70 Texas Crim. Rep., 37, 155 S. W., 546. All of the named cases were reviewed in Claxton v. State, 105 Texas Crim. Rep., 308, 288 S. W., 444, in which the right of this court to reverse upon the facts under article 848 (formerly article 939), C. C. P., was recognized, but it was further noted that the state of mind in which a homicide was committed was for the jury to determine." Under the authorities mentioned, we are of opinion that the evidence supports the finding of the jury that appellant was actuated by malice.

The undertaker who prepared the body of deceased for burial testified as follows: "Either of those three wounds found on the body of deceased could have proven fatal." Again, he testified that deceased died as a result of said wounds. Appellant objected on the ground, among others, that the witness

was "not an expert." Touching his qualification, the witness testified: "I have been an undertaker six years. I attended the Dallas School of Embalming. I was there twelve weeks. I took a course in human anatomy there, a course that includes the teaching of all the vital organs of the human body and where they are located. I have had six years' actual experience as an undertaker outside of my schooling." The witness described the wounds in detail before expressing the opinion in question. In Smith v. State, 285 S. W., 1094, this court said: "An undertaker of nineteen years experience described the wounds which he said crushed the skull of deceased and in his opinion caused death. The objection that the witness was not an expert is not deemed tenable." See also McLaughlin v. State, 76 S. W. (2d) 768.

Appellant presented to the court two requested charges which were refused. In one of said charges appellant sought to have the jury instructed that they could not consider his act in slapping Ethel Mae Skaggs as any evidence of his guilt "under the charge of murder." In the second charge he sought to have the jury instructed that the deceased owed Ethel Mae Skaggs no duty to protect her from any threatened acts on the part of appellant. We think both of these charges were properly refused. The difficulty in which deceased lost his life began when deceased demurred because appellant slapped Ethel Mae Skaggs. This was part of the very transaction for which the appellant was on trial, and being part of the res gestae, the evidence relating thereto would not have to be limited. See Collins v. State, 299 S. W., 403.

Appellant brings forward five bills of exception in which he complains of argument of counsel for the State. Said bills were qualified by the court as follows: "There was no objection to the argument and no exception taken. No request was made of the court to instruct the jury to disregard said argument, and the court was of the opinion that the argument was not of such a nature as to require the court of its own motion to instruct the jury not to consider it." If appellant desired to object to the argument of counsel he should have interposed his objection at the time it was made. This court has committed itself to the proposition that ordinarily objection to an argument must be made at the time it occurs in order that the attorney making it may, if he sees fit, withdraw or explain it. Carpenter v. State, 61 S. W. (2d) 849; D. B. (Burl) Scott v. State, Opinion No. 18,507, delivered December 16, 1936. (132 Texas Crim. Rep., 517.)

In a bill of exception it is shown that the county attorney, in argument, said: "I tried upon this trial to show what the witness did say but Moore (meaning defendant's attorney) stopped me and wouldn't let me show it." It appears from the bill that the witness referred to was Ethel Mae Skaggs, and that the county attorney was discussing the fact that she had made a statement contradicting her testimony. The bill is insufficient, in that it fails to show that the witness gave material testimony on behalf of appellant. If the argument tended to impeach the witness we would not be warranted in ordering a reversal if she was not a material witness. Stated in another way, if the witness did not give testimony beneficial to appellant we are unable to perceive how the argument, if improper, could have prejudiced appellant. The bill being insufficient, in that it fails to show that the witness in question gave material testimony on behalf of appellant, we would not be warranted in ordering a reversal. See Stapleton v. State, 22 S. W. (2d) 939, and authorities cited.

Appellant brings forward several bystanders' bills in which complaint is made of the argument of the county attorney. In none of said bills does it appear that objection was made at the time the argument was made. Hence, under the decisions, nothing is presented for review. Carpenter v. State, supra.

In his motion for a new trial appellant set up newly discovered evidence, and attached the affidavit of the witness. In the court's order overruling the motion for a new trial it is recited that evidence was heard. The evidence is not brought forward. It is the rule that when the order of the court overruling the motion for a new trial recites that evidence was heard, it will not be presumed on appeal that the affidavits attached to the motion for new trial were considered or that they were alone considered. Where the record reflects that the court heard evidence on an issue and the evidence is not brought forward, this court must presume that the court's action in overruling the motion was correct, and that the trial court acted upon evidence which was sufficient to justify his action. Crouchett v. State, 271 S. W., 99; Sykes v. State, 2 S. W. (2d) 863; Threadgill v. State, 61 S. W. (2d) 821.

After a careful re-examination of the record in the light of appellant's motion for rehearing we are constrained to adhere to our original conclusion.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—The original opinion was delivered on the 26th day of May, 1937, and the opinion overruling appellant's motion for rehearing is of date the 23d day of June, 1937. Court adjourned for the term on the 25th day of June, 1937. On the 28th day of June (which was after adjournment) appellant lodged with the clerk of the court a request for leave to file a second motion for rehearing, which motion accompanied the request.

It was held in McNeese v. State, 121 Texas Crim. Rep., 421, 52 S. W. (2d) 1049, that a second motion for rehearing filed after court had adjourned for the term could not be considered. See, also, Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, 9 S. W. (2d) 358, and Burleson v. State, 131 Texas Crim. Rep., 76, 96 S. W. (2d) 785.

For the reasons appearing in the cases cited appellant's request for leave to file the second motion for rehearing is denied.

*Denied.*