## T. C. MCLAUGHLIN v. THE STATE.

No. 16966. Delivered October 24, 1934.
Rehearing Denied December 12, 1934.
Reported in 76 S. W. (2d) 768.

392

The opinion states the case.

*David E. O'Fiel, John A. Veillon, Tom C. Stephenson,* and *O. M. Lord,* all of Beaumont, and *Xavier Christ,* of Port Arthur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of 15 years.

The testimony adduced upon the trial, briefly stated, is as follows: The appellant and deceased at the time of the difficulty had been married about two years. It appears from the record that they did not get along very well; that he had whipped her on one or two occasions and had instituted suit for a divorce which was pending at the time of her death. On Saturday evening, October 21, 1933, the appellant and deceased went to town in his automobile for the purpose of purchasing some

groceries. When they returned to the apartment, a son of deceased, accompanied by two young ladies, made them a short visit. After these parties left, the deceased and appellant ate supper and after supper deceased suggested that they go to the home of her cousin to get a heater, and from there they went to the Chandler Hotel where they visited with Mr. and Mrs. Chandler until about midnight. When they left there, they went riding and after riding a while they drove up to a restaurant which was run by Mr. and Mrs. Stalsby. The appellant called Mr. Stalsby out and asked him if he would see that Mrs. McLaughlin got home as he, appellant, was not going home with her. Mr. Stalsby agreed to do so, whereupon the appellant left in his car, leaving the deceased at the restaurant. At about 1 A. M., when Mr. and Mrs. Stalsby closed their place of business for the night, they accompanied Mrs. McLaughlin to within one-half block of her home from where she went to her home by herself. About 1:30 A. M. the appellant came home and soon thereafter Mrs. Perkins, who occupied an adjoining apartment to that of the appellant and his wife, heard a disturbance in the appellant's apartment and heard Mrs. McLaughlin calling for help. She heard Mrs. McLaughlin say, "Come quick, he is killing me, he is choking me," and then she heard the appellant say, "Yes, damn you, I will kill you." Mrs. Perkins then called Mr. Morgan, who also occupied an apartment in the same building, and asked him to go into the apartment of the appellant and stop him or do something. Mr. Morgan responded to the request of Mrs. Perkins and as he started into the hallway leading into the McLaughlin apartment, he heard appellant say, "I came in and she (deceased) jumped on me like a cat, fighting, scratching me and biting me and I tried to knock the top of her damned head off." Mr. Morgan saw Mrs. McLaughlin sitting in a rocking chair with her head leaning back and apparently resting her chin on her hands, and as the disturbance seemed to have quieted he returned to his apartment, but in a few minutes thereafter the appellant rushed out of his back door and said to Mr. Morgan,, "She is dead." It was somewhere about 20 minutes between the time Mrs. Perkins first heard Mrs. McLaughlin calling for help until she was dead. The undertaker who prepared the body for burial and two other parties testified that they examined the deceased and found that she had a bruise on each cheek and a fracture of the skull over the left eye. The appellant's version of the unfortunate affair is as follows: The deceased became offended at him when they left the hotel and began to quarrel; that he decided to drive around town for a

while so as to give her time to quiet down as he did not want to go home while she was in such a frame of mind as she might disturb the occupants of the apartment, but apparently she did not quit quarreling and then he took her to the restaurant and requested Mr. Stalsby to take her home while he drove around for a while to give her time to go home and go to sleep, but that when he reached home and entered the apartment she jumped at him like a cat, attacked him with a hand mirror, and began to scratch and bite him; that in order to stop her he slapped her and shoved her away, which caused her to fall on a rocking chair; that he did not strike her with anything but his hands; that what he did was in self-defense and that the actual cause of her death was the result of an accident.

By bill of exception No. 1 the appellant complains of the action of the trial court in permitting Mrs. Perkins to testify that she heard the appellant striking and choking the deceased because the same was but an opinion and conclusion of the witness. The testimony, however, shows that the witness was familiar with the deceased's voice; that she heard the deceased say, "He is killing me, he is choking me," and she heard him striking the deceased; that the witness was familiar with deceased's voice and recognized it; that she heard deceased say, "he is killing me, he is choking me" is not an opinion or conclusion of the witness, and that she heard the blows when he was striking her was not a conclusion of the witness but the statement of a fact.

By bill of exception No. 2 the appellant complains of the following argument employed by the district attorney: "I know what could have produced the wound or alleged fracture in the skull of the deceased. A blackjack could have produced it," to which appellant objected because there was no evidence that the fractured skull was caused by a blackjack. The indictment charged that "T. C. McLaughlin did unlawfully, voluntarily, and with malice aforethought kill Ida McLaughlin in some manner and by some means, instruments, and weapons to the grand jurors unknown." There was no direct proof as to what means, if any, the appellant employed in inflicting the injury resulting in her death. There was testimony given by several witnesses that the skin was not broken at the place of the fracture. It is our opinion that under the allegations in the indictment and the testimony showing the condition of deceased's head that any inference which would be a reasonable and plausible deduction from the facts and circumstances would not be improper, but the bill of exception also shows that the court at the request

of the appellant instructed the jury to disregard the argument which, we think, from the light of the record, cured the error, if any there was.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the undertaker to testify that he found deceased's skull fractured and in his opinion the injury was sufficient to cause death, to which appellant objected on the ground that the undertaker was not qualified to express an opinion as to what caused the death of deceased, that he was not a physician or surgeon, etc. The undertaker had testified that he was a qualified, licensed, and experienced embalmer; that he had been engaged in the business several years. We think that human intelligence coupled with the human experience of an embalmer would be a sufficient qualification to authorize an expression of an opinion as to the cause of death in such instances, and in support of the views here expressed we refer to the case of Smith v. State, 104 Texas Crim. Rep., 567, and the case of Espinoza v. State, 73 Texas Crim. Rep., 237.

Bill of exception No. 4 complains of similar matters as bill of exception No. 1 and is overruled for the same reasons there stated.

By bill of exception No. 5 the appellant complains of the action of the trial court in permitting the State to prove by Mary Orr that during 1932 the deceased had a broken arm; that appellant came home drunk one day and offered a drink to deceased, which she refused; that he, appellant, pulled the deceased's hair, kicked her, slapped her, and tried to break her arm again, to which testimony he objected because it was too remote; that it related to separate and distinct offenses and did not involve moral turpitude. It has been consistently held by this court that prior assaults, former grudges, and former quarrels between the parties may be proven to show ill will and malice of the accused at the time of the alleged offense and to establish a motive. See Sullivan v. State, 31 Texas Crim. Rep., 486, 20 S. W., 927; Hill v. State, 168 S. W., 864; Branch's Ann. P. C., sec. 1881.

By bill of exception No. 6 the appellant complains of the action of the trial court in permitting L. B. Maddox, a policeman, to testify that he went to appellant's apartment about 9 A. M. on the day of the alleged homicide; that he found the bed disarranged, that he found two trunks and two rocking chairs, a sewing machine, and a table; that the bed sheets had some blood on them; that he found in the tray of a trunk the stock of a 12 gauge shotgun and the barrel of said gun on the bottom

of the trunk; that he found a mark on the sheets that looked like a metal instrument had been laid on the sheet; that he found rusty places about four or five inches long which looked like they may have been caused by the barrel of the gun; that the barrel fitted right into the mark. The appellant objected on the ground that it was not shown that other people had not been on the premises, that it was too remote and was obtained without a search warrant. The bill of exception shows, however, that when the testimony was elicited the appellant objected and the court instructed the jury not to consider the same, but the appellant insists that notwithstanding such an instruction the prejudicial effect could not be withdrawn. We do not agree with the appellant's contention. The witness merely testified to what he found in appellant's apartment a few hours after the homicide; the fact that the bed was disarranged, that there were two trunks, two rocking chairs, a sewing machine, and a gun in a trunk in the room certainly could not have been prejudicial to him.

By bill of exception No. 7 the appellant complains of the action of the trial court in permitting the State to display a shotgun in the courtroom when it had not been introduced as evidence. The record discloses that R. G. Phelps, a son of deceased, testified that he had left the gun with the appellant at the appellant's apartment; that the gun was found in the apartment a few hours after the homicide. The indictment charged the appellant killed deceased in some manner and by the use of some instrument or weapon to the grand jury unknown. The gun was identified as the gun which the witness had previously left with the appellant. We think that under the allegations in the indictment and under the testimony of the witness Phelps there was no error on the part of the court in permitting the gun to remain in the courtroom within view of the jury. It is our opinion that this testimony was clearly admissible. We therefore overrule the appellant's contention.

Bill of exception No. 8 appears to us to be without merit and is overruled. Bills of exception 9 and 10 relate to similar matters as complained of in bill of exception No. 7 and are overruled for the reasons there stated. Bill of exception No. 11 appears to us to be without merit and is overruled. The testimony complained of in bill of exception No. 12 was admissible on the question of ill will, malice, and motive. The bill of exception is overruled.

The appellant urges some 25 or 30 exceptions to the court's charge. The court in his charge instructed the jury on murder

with malice aforethought, murder without malice aforethought, aggravated assault, self-defense, and accidental death. We have examined the court's charge together with the objections urged thereto, and have reached the conclusion that when the court's charge is considered as a whole it adequately presented every issue raised by the testimony. The appellant insists that the court should have charged the law of self-defense as if he had been attacked under circumstances from which he apprehended death or serious bodily injury at the hands of deceased. The appellant testified that she had no pistol; that the only thing she attacked him with was a little hand mirror which he took away from her and disarmed her. He did not testify that he was in fear of death or serious bodily injury at her hands, and therefore the charge which he insists should have been submitted was not authorized. He also objected to the definition of the term "adequate cause" in the court's main charge. When that paragraph is taken in connection with paragraph 12 of the court's main charge, it is deemed sufficient. Having reached the conclusion that no error has been specifically pointed out in the charge which was calculated to injure the right of the appellant, we overrule his exceptions. See article 666, C. C. P.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—Appellant renews complaint of paragraph sixteen of the charge of the trial court, which contains part of the charge on self-defense. We have examined same in the light of the motion and the authorities cited therein. Appellant did not claim that his wife was making any attack upon him which caused him to fear death or serious bodily injury, nor that in self-defense against any such attack he killed her. At most he said she was attacking him with her hands, and that he shoved or struck her in such manner as that she fell, striking her head against a chair, and that he had no intent to kill her. He also said that she was highly nervous, and that her heart beat too fast.

In said paragraph sixteen the trial court went no further than to tell the jury that if deceased was making or about to make an attack upon appellant, and he struck his wife in any

way, after he had made every reasonable effort to ward off her attack, and that such act on his part caused her death, he should be acquitted. The rule is well settled that the charge of the trial court must be looked to as a whole. In paragraph seventeen thereof the court fully applied the law of self-defense to the facts as testified to by appellant, and told the jury that if he and his wife were in a difficulty and he pushed or slapped her without specific intent to kill,—and she was thereby thrown down and struck her head on the floor or a chair, and her death ensued either from the striking, or that coupled with her over-wrought condition, they should acquit. In Fleming v. State, 101 Texas Crim. Rep., 19; Best v. State, 58 Texas Crim. Rep., 327, and Casner v. State, 57 S. W., 821, cited by appellant, we condemned identical charges in each case which, as part of the definition of justifiable homicide, told the jury that in such case all other means must be resorted to, etc. We do not think these cases any authority for holding the charge here given, to be erroneous.

Appellant's renewed criticism of paragraph seventeen of the charge is not well founded. The testimony showed that the skull of deceased was fractured. The woman in the next apartment said she heard deceased calling for help; that appellant was killing her. She said she heard appellant "Beating on her"; heard appellant say, "Yes, damn you, I will kill you." Morgan, who responded to the calls for help, said that appellant told him that deceased was fighting him, and he "Tried to knock the top of her damned head off." Appellant testified, as above set out, that when he came to their room, just before the killing, deceased attacked him, and that he fought back with his hands only, and that when he shoved or slapped her she fell and struck a chair, and that she presently died from either the contact with the chair or from some internal condition for which he was not responsible. In presenting appellant's defensive theory in paragraph seventeen, the court charged as follows: "If you believe from the evidence, or if you have a reasonable doubt thereof, that at the time and place in question, the defendant and the deceased became embroiled in a fight or difficulty, and that while so engaged the defendant slapped and pushed the deceased away from him, without any specific intent to kill and without any specific intent to injure her, and that she thereby was thrown to the floor and struck her head upon the floor or a chair, and from such striking alone, or from the striking coupled with her overwrought physical condition, if any, her death was caused, then you will acquit the defendant of any offense

charged against him and say by your verdict not guilty." We think this not open to appellant's criticism.

Mrs. Perkins in the next apartment swore that she heard appellant choking his wife and beating on her, and heard deceased say "Come quick Mrs. Perkins, he is killing me; he is killing me; he is choking me." Appellant insists in his motion that we erred in holding it proper to allow this witness to so testify upon the ground that it was but a conclusion. We note further in Mrs. Perkins' testimony that she said "I could tell by her voice that he was choking her. Anybody could recognize that she was being choked by her voice." The statement made by deceased was part of the res gestae. What she then said was admissible, as detailed by Mrs. Perkins as was witness' statement that she heard him beating and choking his wife.

We have examined all the cases cited in the motion and find in them no support for appellant's contention. The facts are vastly different in the case at bar from those in the authorities cited. In Steed v. State, 276 S. W., 281, the statements held inadmissible were not res gestae, and were also made by the accused while under arrest.

Insofar as said motion relates to the supposed error of the admission of appellant's treatment of his wife something like a year before this killing, if we understand the record, there was no objection made to this testimony, but a motion was made to exclude it, which was overruled. It was not set up in said motion that appellant's objection was based on the fact that the details of the former difficulty were gone into. Appellant's contention in his motion that such was the ground of his objection seems untenable. Unquestionably proof of former difficulties may be given as supporting the inference of malice and intent.

Being unable to agree with appellant's contentions, the motion for rehearing will be overruled.

*Overruled.*